ESTATE OF ZELLA HALL, DECEASED, ANDREW BOYKO, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 12751-87.          Filed December 26, 1989.

*Walter P. Bubna,* for the petitioner.
*John H. Gadon,* for the respondent.

WHALEN, *Judge:* Respondent determined a deficiency of $109,483.98 in petitioner's Federal estate tax, and an

addition to tax of $10,948.10 under section 6651(a)(1).[1] After concessions, the issue for decision is whether petitioner is entitled to charitable deductions under section 2055 for bequests of remainder interests in a testamentary trust to six charitable organizations.

## FINDINGS OF FACT

All of the facts have been stipulated and are so found. The stipulation of facts submitted by the parties and attached exhibits are incorporated herein by this reference.

Mrs. Zella Hall died testate on June 6, 1983, while a resident of Parma, Ohio. Petitioner, Mrs. Hall's estate, which acts by and through its executor, Mr. Andrew Boyko, maintained an address in Parma, Ohio, at the time it filed the petition in this case.

Mrs. Hall executed her will on April 10, 1983, and a codicil thereto on May 21, 1983. We refer to both documents collectively as the "will." Under the will, she placed the residue of her estate in trust (trust) and directed Mr. Boyko, as trustee, to pay all trust income to her son for life and then divide the remaining principal among six specified charitable organizations. Item VI of the will provides:

I give and bequeath all the rest and residue of my estate, consisting of all bonds, stocks, savings and checking account monies which I may possess at the time of my death to ANDREW BOYKO, my attorney as trustee, wherein said trustee shall transmit from time to time all interest, dividends and other monies earned from the principal of said trust to my beloved son, LEWIS F. HALL, for his own personal use, such earnings shall be given to him during his lifetime.

Upon his decease the principal of said trust shall be distributed as follows: One Thousand Dollars ($1,000.00) to each of the following organizations - American Cancer Society, American Heart Association, Salvation Army and to the American Red Cross.

The balance of said principal to be used for a scholarship fund and research programs at Western Reserve Medical School and St. Vincent Charity Hospital in proportions as I will hereafter designate to my trustee with the stipulation that such scholarship and medical research programs bear the name of Zella Hall.

Should I not select the specific program prior to my decease, then in that event, I authorize my trustee within his sole discretion, to designate such programs.

---

[1] Unless otherwise specified, all section references are to the Internal Revenue Code as amended.

On June 8, 1983, shortly after Mrs. Hall's death, Mr. Boyko applied to the Probate Court Division of the Court of Common Pleas, Cuyahoga County, Ohio (Probate Court) for probate of the will. For that purpose, he filed Probate Court Form 2.0, entitled "Application to Probate Will," together with another Probate Court form, Form 1.0, entitled "Surviving Spouse, Next of Kin, Legatees and Devisees." The application describes Form 1.0 as a "list of the surviving spouse, next of kin, legatees and devisees known to applicant, which list includes those persons entitled to notice of the hearing on this application." The will was admitted to probate on June 13, 1983.

For purposes of this case, it is significant that Form 1.0 inquires whether the will contains a charitable trust subject to certain provisions of the Ohio Code, including a provision dealing with the reformation of charitable trusts. In response, the Form 1.0 filed on behalf of petitioner contains a check mark in the box provided to indicate: "The Will is *not* subject to Revised Code sections 109.23 to 109.41, relating to charitable trusts." (Emphasis supplied.) The form does not contain a check mark in the box which states: "The Will contains a charitable trust or a bequest or devise to a charitable trust, subject to Revised Code sections 109.23 to 109.41."

At the time petitioner filed Form 1.0 with the Probate Court, one of the 22 provisions referred to on the form, section 109.232, Ohio Rev. Code Ann. (page 1984), provided:

(A) The governing instrument of a trust described in division (A) of section 109.231 [109.23.1] of the Revised Code may be amended to permit the trust to acquire the characteristics of a trust described in section 664(D)[sic](1) or (2) of the Internal Revenue Code of 1954, or to conform to the requirements of, or to obtain benefits available under, section 507, 508, or 509 of the internal revenue code of 1954. Such amendment may be made by the trustee with the approval of the attorney general, of the trustor, and if one or more beneficiaries are named in the governing instrument of such trust, of each named beneficiary. If the trustor is not then living or is not then competent to give such approval, such amendment may be made by the trustee with the approval of the attorney general and, if one or more beneficiaries are named in the governing instrument of such trust, of each named beneficiary. If one or more of said required approvals is not obtained, the trustee may apply to the court having jurisdiction over such trust for approval of such amendment. Said governing instrument may also be amended in any

respect and by any method set forth therein or as otherwise provided by law.

(B) Nothing in this section impairs the rights and powers of the courts or the attorney general of this state with respect to any trust.

(C) For the purposes of sections 109.231 [109.23.1] and 109.232 [109.23.2] of the Revised Code, all references to sections of the internal revenue code of 1954 include all amendments or reenactments thereof.

On April 9, 1984, petitioner filed its Federal estate tax return with the Cincinnati Service Center. The return reported a gross estate of $668,177.51 and claimed charitable deductions in the aggregate amount of $296,023.18 for the remainder interests in the trust. Although it filed the return 34 days after the due date, petitioner did not apply for or obtain an extension of time in which to file the return.

By letter dated August 8, 1984, an agent of the Internal Revenue Service asked petitioner to supply certain information, including a "copy of [the] charitable remainder trust." On December 3, 1984, in response to this inquiry, petitioner's attorney sent various documents to the agent and stated that "in addition, I will further research the charitable trust issue." Approximately two weeks later, on December 21, 1984, petitioner's attorney wrote respondent's agent and stated:

In addition, regarding the charitable trust remainder, the Executor states that he believes that there are no other written documents concerning this charitable trust other than the will itself. We believe that the remainder interest is of a charitable trust remainder nature. I would like to fully discuss this issue at a meeting in the future.

By letter dated March 20, 1985, petitioner's attorney advised respondent's agent: "furthermore I am in the process of attempting to receive information concerning the charitable remainder trust." By letter dated November 27, 1985, he further advised respondent's agent that "regarding your questions on the above estate, I have learned * * * [that] Mr. Boyko * * * [s]till believes that the Estate is entitled to the charitable remainder deduction."

On December 4, 1985, petitioner's attorney again wrote to respondent's agent and stated that:

In order to meet the form requirements of the IRS, the executor of the Estate of Zella Hall is considering filing a petition for reformation in

order to amend the charitable trust so that it can qualify for the deduction. We have precedent in the case of Oxford Orphanage, Inc. v. U.S. (U.S. Court of Appeals, 4th Cir.) NOS. 84-1650, 1693 (10-21-85). [Emphasis supplied.]

In 1986, petitioner filed "Petition For Reformation To Amend Charitable Trust" (petition) with the Ohio Attorney General's Office. The petition sought to amend the trust pursuant to section 109.232, Ohio Rev. Code Ann., quoted above, so that the trust qualified in form as a charitable remainder unitrust, as described in section 664(d)(2). The petition states as follows:

STATE OF OHIO
OHIO ATTORNEY GENERAL'S OFFICE
PETITION FOR REFORMATION TO AMEND CHARITABLE TRUST

The Executor and Trustee of the Estate of ZELLA HALL and the beneficiary of such Estate petition the Ohio Attorney General's Office to approve the following petition for reformation and amendment of the testamentary charitable trust (in ITEM VI of her will) of the Estate of ZELLA HALL to conform to federal law as allowed by ORC 109.232, by amending it as follows:

AMENDMENT
ZELLA HALL CHARITABLE REMAINDER INTEREST

1. The trustee shall pay to LEWIS HALL in each taxable year of the trust during his life an unitrust amount equal to at least six percent (6%) of the net fair market value of the trust assets as valued on the first day of each taxable year of the trust. The unitrust amount shall be paid in equal monthly installments from income. Any income of the trust for a taxable year in excess of the unitrust amount shall be added to principal.

2. Upon the death of Lewis Hall, the trustee shall distribute all of the then principal and income of the trust, other than any amount due to the following groups: One Thousand Dollars ($1,000.00) to each of the following organizations - American Cancer Society, American Heart Association, Salvation Army and to the American Red Cross.

The balance of said principal to be used for a scholarship fund and research programs, selected by the trustee, at Western Reserve Medical School and St. Vincent Charity Hospital in proportions designated by the trustee.

3. If the above charities are not one described in Section 170 (c) of the Internal Revenue Code of 1954 as the time when any principal or income is to be distributed to it, the trustee shall distribute such principal or income to one or more organizations then described in Section 170 (c) as the trustee shall select in his sole discretion. This Testamentary Charitable Remainder Trust shall be in conformity with Internal Revenue Code Sections 2055 and 664.

4. In determining the annuity amount, the trustee shall prorate the same on a daily basis for a short taxable year and for the taxable year of Lewis Hall's death

5. If any additional contributions are made to the trust after the initial contribution, the unitrust amount for the taxable year in which the assets are added to the trust shall be at least six percent (6%) of the sum of (a) the net fair market value of trust assets (excluding the assets so added and any income from, or appreciation on, such assets) and (b) that proportion of the value of the assets so added that was excluded under (a) which the number of days in the period which begins with the date of contribution and ends with the earlier of the last day of the taxable year or Lewis Hall's death bears to the number of days in the period which begins on the first day of such taxable year and ends with the earlier of the last day in such taxable year or Lewis Hall's death. In the case where there is no valuation date after the time of contribution, the assets so added shall be valued at the time of contribution.

6. Except for the payment of the annuity amount, to Lewis Hall the trustee is prohibited from engaging in any act of self-dealing as defined in Section 4941 (d) of the Internal Revenue Code of 1954, from retaining any excess business holdings as defined in Section 4943 (c) of the Code which would subject the trust to tax under Section 4943 of the Code, from making any investments which would subject the trust to tax under Section 4944 of the Code, and from making any taxable expenditures as defined in Section 4945 (d) of the Code.

The trustee shall make distributions at such time and in such manner as not to subject the trust to tax under Section 4942 of the Code.

The Attorney General approved the petition by letter dated May 22, 1986.

By statutory notice dated February 27, 1987, respondent disallowed charitable deductions for the remainder interests, and determined an addition to tax under section 6651(a)(1) due to the fact that petitioner did not timely file its estate tax return.

On February 5, 1988, 6 days prior to submission of the case in the proceeding before this Court, the Probate Court entered an order in the probate proceeding involving Mrs. Hall's will, entitled "Judgment Entry Nunc Pro Tunc" (order), which provided:

On the 5 day of February, 1988, the Motion to Amend Probate Court Form 1.0 was heard and based on the motion, affidavit, and evidence, it is hereby ORDERED That Probate Court Form 1.0 is corrected to denote that the Will did contain a charitable remainder trust, subject to Ohio Revised Section 109.23 to 109.41.

Thus, entry shall apply retroactively to the date of the filing of form 1.0 on June 8, 1983.

The record before this Court does not contain the "motion, affidavit and evidence" referred to in the Probate Court's order.

### OPINION

Generally, for purposes of the estate tax imposed by section 2001, charitable bequests are deductible from the value of the gross estate in computing a decedent's taxable estate. Sec. 2055(a). An exception to this general rule applies to interests in bequeathed property which are split between charitable and noncharitable beneficiaries. In that case, no deduction is allowed unless the "split interest" bequest is formulated in terms of one of the forms set out in the statute. Sec. 2055(e). For example, if the bequeathed property passes in trust to an intervening noncharitable beneficiary with the remainder to charity, as in this case, no deduction is allowed unless the bequest is formulated in terms of a "charitable annuity trust" or "charitable remainder unitrust," described in section 664, or in terms of a "pooled income fund," described in section 642(c)(5). Sec. 2055(e)(2)(A); *Estate of Edgar v. Commissioner*, 74 T.C. 983, 986 (1980), affd. without published opinion 676 F.2d 685 (3d Cir. 1982).

The common feature of these prescribed forms is that the amount to be received each year by the income beneficiary is fixed in relation to the remainder interest so that there is no incentive to favor the noncharitable income beneficiary over the charitable remainder beneficiary through manipulation of the investment of trust assets. See generally H. Rept. 91-413 (Part 1) (1969), 1969-3 C.B. 200, 237-239; S. Rept. 91-552, (1969), 1969-3 C.B. 423, 479-482. The statute provides similar rules governing property passing to a charity as an income beneficiary and thereafter to a noncharitable remainderman. Sec. 2055(e)(2)(B).

The purpose of the limitation on split interest bequests is to "provide a closer correlation between the charitable contributions deduction and the ultimate benefit to charity." S. Rept. 91-552, *supra*, 1969-3 C.B. at 479; H. Rept. 91-413 (Part 1), *supra*, 1969-3 C.B. at 237. Prior to enactment of this limitation as part of the Tax Reform Act of 1969, Pub. L. 91-172, 88 Stat. 487, gifts to charity of

remainder interests in trust were not required to have any necessary relation to the value of the benefit actually received by the charity. Congress perceived the abuse that trust assets could be, and were, invested in a manner so as to maximize the income interest, with the result that there was little relation between the interest assumptions used in calculating the gift's present value as deducted on the return and the amount ultimately received by the charity. H. Rept. 91-413 (Part 1), *supra,* 1969-3 C.B. at 237; S. Rept. 91-552, *supra,* 1969-3 C.B. at 479.

Mrs. Hall executed her will in 1983, approximately 14 years after enactment of the Tax Reform Act of 1969. The will, however, simply provides that all trust income is to be paid to Mrs. Hall's son during his lifetime, and, after his death, the remaining principal is to be paid to six charitable organizations. Contrary to the limitation promulgated by the Tax Reform Act of 1969, the son's income interest is not formulated in terms of a stated dollar amount, as required under a charitable annuity trust, or in terms of a fixed percentage of the value of the trust property, as required under a charitable unitrust, or in terms of an interest in a pooled income fund. Thus, the charitable bequests contained in the will clearly fail to meet any of the prescribed statutory forms for a split interest charitable remainder trust. Petitioner does not contend otherwise.

Petitioner's contention that the bequests qualify as deductible charitable bequests is based on the amendment of the Trust approved on May 22, 1986, by the Ohio Attorney General pursuant to section 109.232, Ohio Rev. Code Ann. Petitioner contends the amendment constitutes a "qualified reformation" of the trust within the meaning of section 2055(e)(3)(B). That provision, in effect, permits amendment of a governing instrument of a trust to comply with one of the prescribed forms for a split interest trust. The statute then allows the amended bequest to retroactively qualify for charitable deduction. Sec. 2055(e)(3)(A).[2]

---

[2]Congress has enacted, reenacted, and amended several versions of the savings provision set forth in sec. 2055(e)(3). As originally enacted in 1974, the provision applied to estates of decedents dying after Dec. 31, 1969, whose wills and trusts were executed before Sept. 21, 1974, and were amended or conformed by Dec. 31, 1975, or by the 30th day after the conclusion of judicial reformation proceedings commenced on or before Dec. 31, 1975. Act of Oct. 26, 1974, Pub. L. 93-483, sec. 3, 88 Stat. 1457. Subsequent amendments in 1976, 1978, and 1980 successively extended the section's effective date to include wills and trusts executed

There are a number of technical requirements which must be met in order for an amendment of a trust instrument to constitute a qualified reformation. In this case, the parties agree that all of the requirements for a qualified reformation have been met, with one exception. The only exception, and the only issue in this case, is whether the action taken by the petitioner to amend the trust was timely commenced. Respondent contends that the reformation was not timely under section 2055(e)(3)(C)(iii). Thus, in respondent's view, the limitation on split interest bequests applies to make petitioner ineligible for the charitable deductions at issue. We agree with respondent.

Section 2055(e)(3)(C)(iii) provides:

SPECIAL RULE WHERE TIMELY COMMENCEMENT OF REFORMATION.— Clause (ii) shall not apply to any interest if a judicial proceeding is commenced to change such interest into a qualified interest not later than the 90th day after—

(I) if an estate tax return is required to be filed, the last date (including extensions) for filing such return, or

(II) if no estate return is required to be filed, the last date (including extensions) for filing the income tax return for the 1st taxable year for which such a return is required to be filed by the trust.

The purpose of this time limitation is to prevent "the correction of *major,* obvious defects (such as where the 'income' interest is not expressed as an annuity interest or a unitrust interest)" *after* "the defects are found upon audit by the Internal Revenue Service," and to assure that "reformation proceedings are begun before there is an opportunity by the Internal Revenue Service to audit the matter." (Emphasis supplied.) H. Rept. 98-432 (1984), to

---

or created before Dec. 31, 1978, by decedents dying after Dec. 31, 1969, and amended or conformed before Dec. 31, 1981. Tax Reform Act of 1976, Pub. L. 94-455, sec. 1304, 90 Stat. 1715; Revenue Act of 1978, Pub. L. 95-600, sec. 514, 92 Stat. 2883; Miscellaneous Revenue Act of 1980, Pub. L. 96-605, sec. 301, 94 Stat. 3530.

A 1984 amendment replaced sec. 2055(e)(3) with a revised and "permanent rule" for the reformation of charitable trusts. Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, sec. 1022(a), 98 Stat. 1026; H. Rept. 98-432 (1984), to accompany H.R. 4170 (Pub. L. 98-369), 1516-1517, reprinted in 3 U.S. Code Cong. & Admin. News 697, 1156-1157 (1984). This amendment applied retroactively to reformations made after Dec. 31, 1978, excluding reformations to which sec. 2055(e)(3) as in effect on July 17, 1984 applies. Sec. 1022(e), DEFRA, 98 Stat. 1029. Sec. 2055(e)(3), as in effect on July 17, 1984, applied only to wills executed before Dec. 31, 1978, and amended before Dec. 31, 1981. Because decedent executed the will in 1983, and petitioner amended the trust in 1986, sec. 2055(e)(3), as amended by DEFRA, applies to the case before us.

accompany H.R. 4170 (Pub. L. 98-369), 1516-1517, reprinted in 3 U.S. Code Cong. & Admin. News 697, 1156-1157 (1984).

The time limitation does not apply to trusts which "evidence an intent to comply with the 1969 Act rules," so as to permit "correction of *minor* defects (such as defects in determining the correct payout in short taxable years, in years of additional contributions, etc.) upon audit so long as there was a good faith attempt to comply with the 1969 Act rules (i.e., the payout is basically expressed as an annuity interest or a unitrust interest)." (Emphasis supplied.) H. Rept. 98-432, *supra* at 1517, reprinted in 3 U.S. Code Cong. & Admin. News 697, 1156-1157 (1984). Thus, the statute provides an exemption from the time limitation for trusts whose income payments are "expressed either in specific dollar amounts or a fixed percentage of the fair market value of the property." Sec. 2055(e)(3)(C)(ii). Petitioner, however, does not contend that the trust contains only "minor" defects and thus qualifies for this exemption.

As applied in this case, in order for reformation of the trust to have been timely, the subject time limitation requires "a judicial proceeding * * * to change such interest" to have been "commenced" within 90 days of the date (including extensions) on which petitioner's Federal estate tax return was required to be filed. The due date for petitioner's return was March 6, 1984, 9 months after Mrs. Hall's death on June 6, 1983. Sec. 6075. Although the prescribed 90-day period following this date expired on June 4, 1984, certain applicable phase-in provisions extended the deadline for the commencement of judicial reformation proceedings in petitioner's case until October 16, 1984.[3]

The proceeding which culminated in amendment of the trust was not commenced until 1986 when a petition for reformation was filed with the Ohio Attorney General's office. The record does not reveal the precise date on which the petition was filed, but the parties have stipulated that it was not "until 1986," at least one year and three months after the above deadline expired, and long after respondent began his audit of petitioner's return, as indicated by the

---

[3]Sec. 1022(e) of DEFRA, 98 Stat. 1029, provided that the 90th day described in sec. 2055(e)(3)(C)(iii) shall be treated as not occurring before the 90th day after the date of DEFRA's enactment. Congress enacted DEFRA on July 18, 1984, and the 90th day thereafter was Oct. 16, 1984.

course of correspondence between petitioner's attorney and respondent's agent. Therefore, it is clear that the proceedings before the Ohio Attorney General were commenced after the deadline, and thus cannot satisfy the time limitation on reformation proceedings under the statute. Petitioner does not rely on these proceedings, presumably because they were not timely commenced, and we are not called upon to decide in this case whether reformation by application to a State attorney general's office qualifies as a "judicial proceeding" for purposes of the time limitation contained in section 2055(e)(3)(C)(iii).

Petitioner contends that a "judicial proceeding" to reform the trust was timely commenced when the will and Probate Court Form 1.0 were filed with the Probate Court on June 8, 1983. Petitioner seizes upon the fact that Form 1.0 inquires whether the will contains a charitable trust subject to the Ohio reformation procedure, and asserts that the act of filing that form with the Probate Court constitutes the commencement of a "judicial proceeding" to reform the trust. Petitioner acknowledges that Form 1.0, as filed on that date, stated "the will is *not* subject to Revised Code secs. 109.23 to 109.41, relating to charitable trusts," but argues that the form was corrected nunc pro tunc by order of the Probate Court issued shortly before submission of this case. In petitioner's view, the judicial proceeding which was thus commenced culminated on May 22, 1986, when the Ohio attorney general approved the amendment of the trust.

Petitioner's argument boils down to the anomalous contention that it commenced a judicial proceeding to reform the trust before the deadline, even though the specific actions taken to effectuate that purpose, consisting of the reformation procedure before the attorney general's office and the correction of Form 1.0, took place after the deadline expired.

We agree with petitioner that section 2055(e)(3) is, generally, a remedial provision inuring to the benefit of charity, and should be construed liberally to effectuate the congressional purpose of furthering gifts to charity. See, e.g., *Oxford Orphanage, Inc. v. United States,* 775 F.2d 570, 575 (4th Cir. 1985); *Estate of Crafts v. Commissioner,* 74 T.C.

1439, 1455 (1980). We further agree that Congress intended "to achieve a retroactive statute 'for all purposes' " and "to require treatment 'as if the amended trust was actually in the will.' " *Shriners Hospitals for Crippled Children v. United States,* 862 F.2d 1561, 1563 (Fed. Cir. 1988); see also sec. 1.664-1(f)(3), Income Tax Regs.; *First National Bank of Oregon v. United States,* 215 Ct. Cl. 609, 571 F.2d 21 (1978). Thus, retroactivity "for all purposes" requires, among other things, the refund of interest paid on the amount of estate tax that would have been due but for reformation under section 2055(e)(3)(C). E.g., *Shriners Hospitals for Crippled Children v. United States, supra; Oxford Orphanage, Inc. v. United States, supra; First National Bank of Oregon v. United States, supra.*

However, petitioner cites *Oxford Orphanage, Inc. v. United States, supra* at 574, and argues that the commencement date of the reformation proceeding at issue is retroactive because "a will amended pursuant to section 2055(e)(3) is, 'retroactive for all purposes.' " To the contrary, in our view, a reformation may be retroactively *effective* "for all purposes" as of a given date, but that date bears no relation to the commencement of the reformation proceeding itself, which is the determinative factor for purposes of section 2055(e)(3)(C)(iii). We do not believe that the Probate Court's retroactive correction of Form 1.0, to be effective as of June 8, 1983, rendered the actual commencement of any associated reformation proceeding retroactive to that date as well.

We decline to accept petitioner's construction of the statute because it would subvert the congressional intent, expressed in the subject provision, to prohibit correction of major trust defects after audit. Otherwise, if we were to accept petitioner's position, all charitable remainder interests would in effect be reformable at any time, contrary to the clear time limitation set forth in section 2055(e)(3)(C)(iii), and contrary to the underlying congressional intent to permit reformation of major trust defects only if commenced *prior* to the Internal Revenue Service's opportunity to audit the estate's return. See H. Rept. 98-432, *supra* at 1516-1518, reprinted in 3 U.S. Code Cong. & Admin. News 697, 1155-1157 (1984). An estate could circumvent the time

limitation, and contravene the congressional intent, by merely obtaining, long after the deadline had passed, a trust amendment which was retroactive to a time prior to the deadline.

Moreover, we believe that petitioner's construction of the statute strains the plain meaning of the phrase "a judicial proceeding is commenced to change such interest." Although we might agree that petitioner filed Probate Court Form 1.0 in the context of a "judicial proceeding," we cannot agree that the form is in the nature of a pleading which seeks to change or amend the trust. The form completely fails to state what defects are to be cured by the "judicial reformation proceeding" which it "commenced," or how they are to be addressed. The requirement that the trust defects be specifically described is confirmed by the legislative history, which states as follows:

The committee intends that, in order for the commencement of a judicial proceeding to be timely, the pleading must describe the nature of the defect that must be cured. The filing of a general protective pleading is not sufficient. [H. Rept. 98-432, *supra* at 1518, reprinted in 3 U.S. Code Cong. & Admin. News 697, 1158 (1984).]

To the contrary, Form 1.0 is simply a list of the names, addresses, and descriptions of the beneficiaries who receive property under Mrs. Hall's will. It supplements petitioner's application for probate, a proceeding separate from the reformation of the will, and bears no relation to the reformation of the trust's remainder interests through petition to the attorney general's office or to any other attempt "to change such interest[s]." The corrected form merely enumerates several Ohio Code provisions that the trust was "subject to" on June 8, 1983, one of which authorized certain trust amendment procedures. Ultimately, neither the original Form 1.0, nor the Probate Court's order correcting it, affected the will's substantive content.

At most, the corrected form declares petitioner's intent to reform the trust in the future. Petitioner did not effectuate that intent until 1986 when it applied to the Ohio attorney general's office for reformation, long after the deadline had passed. The fact that petitioner did not actually commence its intended reformation of the trust until after the deadline expired is revealed by correspondence between petitioner's

attorney and respondent's agent, which indicates that on December 4, 1985, petitioner was still, in its own words, *"considering* filing a petition for reformation in order to amend the charitable trust so that it can qualify for the deduction." (Emphasis supplied.)

In our view, no judicial proceeding was commenced to reform the trust's remainder interests prior to the October 16, 1984, deadline, and the statute precludes reforming the "major, obvious defects" in the trust after the deadline. See *Estate of Bevan v. Commissioner,* T.C. Memo. 1989-256. Thus, the trust fails to satisfy the requirements of section 2055(e)(2) and no deductions are allowed for the remainder interests at issue.

Because the parties have agreed that the addition to tax under section 6651(a)(1) applies to petitioner if we find there is a deficiency in estate tax, we need not further address that issue.

To reflect the foregoing,

*Decision will be entered under Rule 155.*