941 F.2d 1209
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ESTATE OF Zella HALL, deceased, Andrew Boyko, Executor,
Petitioner-Appellant,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 No. 90-2226.
 United States Court of Appeals, Sixth Circuit.
 Aug. 19, 1991.
 
 Before RALPH B. GUY, Jr., and ALAN E. NORRIS, Circuit Judges, and FRIEDMAN, District Judge.*
 PER CURIAM.
 
 
 1
 Petitioner, Estate of Zella Hall (petitioner, estate, or taxpayer), appeals the Tax Court's decision in favor of respondent, Commissioner of Internal Revenue (respondent or Commissioner). The Tax Court disallowed charitable deductions in the taxpayer's split-interest trust because the taxpayer failed to commence a timely judicial proceeding to convert the trust's format into one that complied with the Internal Revenue Code, specifically, 26 U.S.C. § 2055.
 
 
 2
 Petitioner argues that the Tax Court erred (1) because the changes that needed to be made to the estate were only minor and thus the Code provides that they could have been made at any time; (2) because, even if the required changes triggered the Code's prescribed time limitations, the retroactive change by the state of Ohio satisfied this provision; and (3) because it did not sufficiently consider the congressional intent to favor charitable bequests, and thus it failed to "liberally construe[ ]" the applicable Code provisions. We find petitioner's arguments without merit and, accordingly, affirm.
 
 I.
 
 3
 The facts in this case are not in dispute and, as such, we will substantially adopt the Tax Court's statement of the facts. Estate of Hall v. Commissioner, 93 T.C. 745 (1989).
 
 
 4
 Zella Hall died testate on June 6, 1983, while a resident of Parma, Ohio. Petitioner, which acts by and through its executor, Andrew Boyko, maintained an address in Parma, Ohio, at the time it filed the petition in this case.
 
 
 5
 Hall executed her will on April 10, 1983, and a codicil thereto on May 21, 1983. (Hereinafter, both documents will be referred to collectively as the will). Under the will, Hall placed the residue of her estate in trust and directed Boyko, as trustee, to pay all trust income to her son for life and then divide the remaining principal among six specified charitable organizations. Item VI of the will provides:
 
 
 6
 I give and bequeath all the rest and residue of my estate, consisting of all bonds, stocks, savings and checking account monies which I may possess at the time of my death to ANDREW BOYKO, my attorney as trustee, wherein said trustee shall transmit from time to time all interest, dividends and other monies earned from the principal of said trust to my beloved son, LEWIS F. HALL, for his own personal use, such earnings shall be given to him during his lifetime.
 
 
 7
 Upon his decease the principal of said trust shall be distributed as follows: One Thousand Dollars ($1,000.00) to each of the following organizations--American Cancer Society, American Heart Association, Salvation Army and to the American Red Cross.
 
 
 8
 The balance of said principal to be used for a scholarship fund and research programs at Western Reserve Medical School and St. Vincent Charity Hospital in proportions as I will hereafter designate to my trustee with the stipulation that such scholarship and medical research programs bear the name of Zella Hall.
 
 
 9
 Should I not select the specific program prior to my decease, then in that event, I authorize my trustee within his sole discretion, to designate such programs.
 
 
 10
 On June 8, 1983, shortly after Hall's death, Boyko applied to the Probate Court Division of the Court of Common Pleas, Cuyahoga County, Ohio (probate court), for probate of the will. At that time, he filed probate court Form 2.0, entitled "Application to Probate Will," together with another probate court form, Form 1.0, entitled "Surviving Spouse, Next of Kin, Legatees and Devisees." The application (Form 2.0) describes Form 1.0 as a "list of the surviving spouse, next of kin, legatees and devisees known to applicant, which list includes those persons entitled to notice of the hearing on this application." The will was admitted to probate on June 13, 1983.
 
 
 11
 Form 1.0 inquiries whether the will contains a charitable trust subject to certain provisions of the Ohio Code, including a provision dealing with the reformation of charitable trusts. In response, Form 1.0 filed on behalf of petitioner contains a check mark in the box provided to indicate that "[t]he Will is not subject to [Ohio] Revised Code §§ 109.23 to 109.41, relating to charitable trusts." (Emphasis added). The form contains no check mark in the box which accompanies the description: "The Will contains a charitable trust or a bequest or devise to a charitable trust, subject to [Ohio] Revised Code §§ 109.23 to 109.41."
 
 
 12
 At the time petitioner filed Form 1.0 with the probate court, one of the 22 provisions referred to on the form, Ohio Revised Code § 109.232 [§ 109.23.2], amendment of trust, provided:
 
 
 13
 (A) The governing instrument of a trust described in division (A) of section 109.231 [109.23.1] of the Revised Code may be amended to permit the trust to acquire the characteristics of a trust described in section 664(D) [sic] (1) or (2) of the Internal Revenue Code of 1954, or to conform to the requirements of, or to obtain benefits available under, section 507, 508, or 509 of the internal revenue code of 1954. Such amendment may be made by the trustee with the approval of the attorney general, of the trustor, and if one or more beneficiaries are named in the governing instrument of such trust, of each named beneficiary. If the trustor is not then living or is not then competent to give such approval, such amendment may be made by the trustee with the approval of the attorney general and, if one or more beneficiaries are named in the governing instrument of such trust, of each named beneficiary. If one or more of said required approvals is not obtained, the trustee may apply to the court having jurisdiction over such trust for approval of such amendment. Said governing instrument may also be amended in any respect and by any method set forth therein or as otherwise provided by law.
 
 
 14
 (B) Nothing in this section impairs the rights and powers of the courts or the attorney general of this state with respect to any trust.
 
 
 15
 (C) For the purposes of sections 109.231 [109.23.1] and 109.232 [109.23.2] of the Revised Code, all references to sections of the internal revenue code of 1954 include all amendments or reenactments thereof.
 
 
 16
 On April 9, 1984, petitioner filed its federal estate tax return. The return reported a gross estate of $668,177.51 and claimed charitable deductions in the aggregate amount of $296,023.18 for the remainder interests in the trust. Although it filed the return 34 days after the due date, which was nine months after Hall's death, petitioner did not apply for or obtain an extension of time in which to file the return.
 
 
 17
 By letter dated August 8, 1984, an agent of the Internal Revenue Service asked petitioner to supply certain information, including a "copy of [the] charitable remainder trust." On December 3, 1984, in response to this inquiry, petitioner's attorney sent various documents to the agent and stated that "[i]n addition, I will further research the charitable trust issue." Approximately two weeks later, on December 21, 1984, petitioner's attorney wrote respondent's agent and stated:
 
 
 18
 In addition, regarding the charitable trust remainder, the Executor states that he believes that there are no other written documents concerning this charitable trust other than the will itself. We believe that the remainder interest is of a charitable trust remainder nature. I would like to fully discuss this issue at a meeting in the future.
 
 
 19
 By letter dated March 20, 1985, petitioner's attorney advised respondent's agent: "[F]urthermore I am in the process of attempting to receive information concerning the charitable remainder trust." By letter dated November 27, 1985, he further advised respondent's agent that "[r]egarding your questions on the above estate, I have learned ... [that] Mr. Boyko ... [s]till believes that the Estate is entitled to the charitable remainder deduction."
 
 
 20
 On December 4, 1985, petitioner's attorney again wrote to respondent's agent and stated:
 
 
 21
 In order to meet the form requirements of the IRS, the Executor of the Estate of Zella Hall is considering filing a petition for reformation in order to amend the charitable trust so that it can qualify for the deduction. We have precedent in the case of Oxford Orphanage, Inc. v. U.S. (U.S. Court of Appeals, 4th Circuit) NOS. 84-1650, 1693 (10-21-85). [Emphasis added.]
 
 
 22
 In 1986, petitioner filed a "Petition for Reformation to Amend Charitable Trust" (petition) with the Ohio Attorney General's Office. The petition sought to amend the trust pursuant to Ohio Revised Code § 109.232, quoted above, so that the trust qualified in form as a charitable remainder unitrust, as described in 26 U.S.C. § 664(d)(2). The petition states as follows:
 
 STATE OF OHIO
 OHIO ATTORNEY GENERAL'S OFFICE
 
 23
 PETITION FOR REFORMATION TO AMEND CHARITABLE TRUST
 
 
 24
 The Executor and Trustee of the Estate of ZELLA HALL and the beneficiary of such Estate petition the Ohio Attorney General's Office to approve the following petition for reformation and amendment of the testamentary charitable trust (in ITEM VI of her will) of the Estate of ZELLA HALL to conform to federal law as allowed by ORC 109.232, by amending it as follows:
 
 AMENDMENT
 ZELLA HALL CHARITABLE REMAINDER INTEREST
 
 25
 1. The trustee shall pay to LEWIS HALL in each taxable year of the trust during his life an unitrust amount equal to at least six percent (6%) of the net fair market value of the trust assets as valued on the first day of each taxable year of the trust. The unitrust amount shall be paid in equal monthly installments from income. Any income of the trust for a taxable year in excess of the unitrust amount shall be added to principal.
 
 
 26
 2. Upon the death of Lewis Hall, the trustee shall distribute all of the then principal and income of the trust, other than any amount due to the following groups: One Thousand Dollars ($1,000.00) to each of the following organizations--American Cancer Society, American Heart Association, Salvation Army and to the American Red Cross.
 
 
 27
 The balance of said principal to be used for a scholarship fund and research programs, selected by the trustee, at Western Reserve Medical School and St. Vincent Charity Hospital in proportions designated by the trustee.
 
 
 28
 3. If the above charities are not one described in Section 170(c) of the Internal Revenue Code of 1954 as the time when any principal or income is to be distributed to it, the trustee shall distribute such principal or income to one or more organizations then described in Section 170(c) as the trustee shall select in his sole discretion. This Testamentary Charitable Remainder Trust shall be in conformity with Internal Revenue Code Sections 2055 and 664.
 
 
 29
 4. In determining the annuity amount, the trustee shall prorate the same on a daily basis for a short taxable year and for the taxable year of Lewis Hall's death[.]
 
 
 30
 5. If any additional contributions are made to the trust after the initial contribution, the unitrust amount for the taxable year in which the assets are added to the trust shall be at least six percent (6%) of the sum of (a) the net fair market value of trust assets (excluding the assets so added and any income from, or appreciation on, such assets) and (b) that proportion of the value of the assets so added that was excluded under (a) which the number of days in the period which begins with the date of contribution and ends with the earlier of the last day of the taxable year or Lewis Hall's death bears to the number of days in the period which begins on the first day of such taxable year and ends with the earlier of the last day in such taxable year or Lewis Hall's death. In the case where there is no valuation date after the time of contribution, the assets so added shall be valued at the time of contribution.
 
 
 31
 6. Except for the payment of the annuity amount, to Lewis Hall the trustee is prohibited from engaging in any act of self-dealing as defined in Section 4941(d) of the Internal Revenue Code of 1954, from retaining any excess business holdings as defined in Section 4943(c) of the Code which would subject the trust to tax under Section 4943 of the Code, from making any investments which would subject the trust to tax under Section 4944 of the Code, and from making any taxable expenditures as defined in Section 4945(d) of the Code.
 
 
 32
 The trustee shall make distributions at such time and in such manner as not to subject the trust to tax under Section 4942 of the Code.
 
 
 33
 The Ohio Attorney General approved the petition by letter dated May 22, 1986.
 
 
 34
 By statutory notice dated February 27, 1987, respondent disallowed charitable deductions for the remainder interests and assessed late penalties under 26 U.S.C. § 6651(a)(1) because petitioner did not timely file its estate tax return.
 
 
 35
 On February 5, 1988, six days prior to submission of the case in the proceeding before the Tax Court, the probate court entered an order in the probate proceeding involving Hall's will, entitled "Judgment Entry Nunc Pro Tunc" (order), which provided:
 
 
 36
 On the 5 day of February, 1988, the Motion to Amend Probate Court Form 1.0 was heard and based on the motion, affidavit, and evidence, it is hereby ORDERED That Probate Court Form 1.0 is corrected to denote that the Will did contain a charitable remainder trust, subject to Ohio Revised Code Section 109.23 to 109.41.
 
 
 37
 Thus, entry shall apply retroactively to the date of the filing of form 1.0 on June 8, 1983.
 
 
 38
 Subsequently, the Tax Court held that no judicial proceeding was commenced to reform the trust's remainder interests into deductible charitable interests within 26 U.S.C. Section 2055(e)(3)(C)(iii)'s deadline. "Thus, the trust fails to satisfy the requirements of [26 U.S.C.] section 2055(e)(2) and no deductions are allowed for the remainder interests at issue." Hall, 93 T.C. at 758.
 
 
 39
 As a result, the petitioner's federal estate tax was deficient in the amount of $109,483.98. Additionally, because the petitioner filed its return beyond the statutorily prescribed deadline, and did so without showing reasonable cause, the Tax Court assessed the $10,948.10 in late fines, pursuant to 26 U.S.C. § 6651(a)(1). Id. at 745-46.
 
 
 40
 Petitioner appealed.
 
 II.
 
 41
 Petitioner argues that the estate had only minor defects preventing it from being considered a charitable remainder trust under the Code and, thus, was not subject to the time limitations in 26 U.S.C. § 2055(e)(3)(C)(iii). We disagree.
 
 
 42
 Estates are subject to the imposition of federal taxes pursuant to 28 U.S.C. § 2001(a). Generally, estates can deduct bequests to charitable beneficiaries from federal estate tax liability.[1] 26 U.S.C. § 2005(a); see also 26 C.F.R. § 20.2055-1(a). If, however, a bequest passes to both non-charitable and charitable beneficiaries, certain requirements need to be met before the estate can qualify for a federal tax deduction. See Estate of Crafts v. Commissioner, 74 T.C. 1439, 1444 (1980). Such a bequest is termed a "split-interest" bequest. Oetting v. United States, 712 F.2d 358, 360 (8th Cir.1983). A split-interest bequest is typically "accomplished by giving the income interest in a trust to an individual for life, with the remainder to charity." Id. Thus, Zella Hall's bequest of an income interest for life to her son, with the remainder to various charities, is a typical example of a split-interest trust. A split-interest trust is often the chosen form of testamentary bequest because "[d]ecedents ... desire to mix private objectives with philanthropy in their testamentary transfers...." Estate of Boeshore v. Commissioner, 78 T.C. 523, 525 (1982).
 
 
 43
 Because abuses in the administration of split-interest trusts proliferated under pre-1969 law, resulting in substantial decreases to the value of charitable remainder interests, Congress passed 26 U.S.C. §§ 2055(e)(1) and (2) limiting the circumstances under which a charitable deduction could be taken by an estate.[2] Oetting, 712 F.2d at 360-61. Section 2055(e)(2)(A) is applicable to the current case. It provides, in pertinent part, the following:
 
 
 44
 (e) Disallowance of deductions in certain cases.--
 
 
 45
 ....
 
 
 46
 (2) Where an interest in property ... passes or has passed from the decedent to a person, or for a use, described in subsection (a) [which enumerates qualifying charitable beneficiaries], and an interest ... in the same property passes or has passed ... from the decedent to a person, or for a use, not described in subsection (a), no deduction shall be allowed under this section for the interest which passes or has passed to the person, or for the use, described in subsection (a) unless--
 
 
 47
 (A) in the case of a remainder interest, such interest is in a trust which is a charitable remainder annuity trust or a charitable remainder unitrust (described in section 664) or a pooled income fund (described in section 642(c)(5))....
 
 
 48
 The petitioner argues that it was the "unequivocal intent on the part of the testator to create a charitable remainder unitrust." Title 26 U.S.C. § 664(2) defines a charitable remainder unitrust as follows:
 
 
 49
 (2) Charitable remainder unitrust.--For purposes of this section, a charitable remainder unitrust is a trust--
 
 
 50
 (A) from which a fixed percentage ... of the net fair market value of its assets, valued annually, is to be paid, not less often than annually, to one or more persons (at least one of which is not [a charitable] organization ... for a term of years (not in excess of 20 years) or for the life or lives of such individual or individuals,
 
 
 51
 (B) from which no amount other than the payments described in subparagraph (A) may be paid to or for the use of any person other than [a charitable] organization ... and
 
 
 52
 (C) following the termination of the payments described in subparagraph (A), the remainder interest in the trust is to be transferred to, or for the use of, [a charitable] organization ... or is to be retained by the trust for such a use.
 
 
 53
 The will, as written, does not fall within the definition of a charitable remainder unitrust. The will does not provide for a fixed percentage of the estate's assets to go to Lewis Hall. Rather, it provides that "all interest, dividends and other monies earned from the principal of [the] trust" will go to Lewis Hall during his lifetime.
 
 
 54
 Compliance with the Code can be achieved through a process called reformation. "[T]he term 'qualified reformation' means a change of a governing instrument by reformation, amendment, construction, or otherwise which changes a reformable interest into a qualified interest...." 26 U.S.C. § 2055(e)(3)(B). A qualified interest is "an interest for which a deduction is allowable under subsection (a) [the section providing the methodology for a charitable deduction and enumerating beneficiaries that are charitable for IRS purposes]." 26 U.S.C. § 2055(e)(3)(D). Section 2055(e)(3)(C) sets out the definition of a reformable interest and specifies the time in which reformation must commence.
 
 
 55
 (C) Reformable interest.--For purposes of this paragraph--
 
 
 56
 (i) In general.--The term "reformable interest" means any interest for which a deduction would be allowable under subsection (a) at the time of the decedent's death but for paragraph (2).
 
 
 57
 (ii) Beneficiary's interest must be fixed.--The term "reformable interest" does not include any interest unless, before the remainder vests in possession, all payments to persons other than an organization described in subsection (a) are expressed either in specified dollar amounts or a fixed percentage of the fair market value of the property. For purposes of determining whether all such payments are expressed as a fixed percentage of the fair market value of the property, section 664(d)(3) shall be taken into account.
 
 
 58
 (iii) Special rule where timely commencement of reformation.--Clause (ii) shall not apply to any interest if a judicial proceeding is commenced to change such interest into a qualified interest not later than the 90th day after--
 
 
 59
 (I) if an estate tax return is required to be filed, the last day (including extensions) for filing such return, or
 
 
 60
 (II) if no estate tax return is required to be filed, the last date (including extensions) for filing the income tax return for the 1st taxable year for which such a return is required to be filed by the trust.
 
 
 61
 26 U.S.C. § 2055(e)(3)(C).
 
 
 62
 Section 2055(e)(3)(C)(ii) applies only to those bequests that show intent to comply with the 1969 amendments and would require minor changes to comply, i.e., when payments to non-charitable, intermediary beneficiaries "are expressed either in specified dollar amounts or a fixed percentage of the fair market value of the property." 26 U.S.C. § 2055(e)(3)(C)(ii).
 
 
 63
 Those bequests that do not fall within the description of section 2055(e)(3)(C)(ii), however, must be reformed within 90 days of the filing of the estate tax return. 26 U.S.C. § 2055(e)(3)(C)(iii)(I).
 
 
 64
 The petitioner argues that Hall's trust had only minor defects preventing it from qualifying for a charitable deduction under 26 U.S.C. § 2055(a). As such, pursuant to 26 U.S.C. § 2055(e)(3)(C)(ii), there would be no time limit for reformation. The respondent asserts that this argument was not raised in the Tax Court. The Tax Court concluded that Hall's will was not formulated in either a "stated dollar amount" or "a fixed percentage of the value of the trust property" and "[t]hus, the charitable bequests contained in the will clearly fail to meet any of the prescribed statutory forms for a split interest charitable remainder trust." Hall, 93 T.C. at 752. The Tax Court later noted that "[p]etitioner, however, does not contend that the trust contains only 'minor' defects and thus qualifies for [section 2055(e)(3)(C)(ii)'s] exemption." Id. at 754. While petitioner did not argue to the Tax Court that, but for minor defects, the will conformed to post-1969 requirements, this is precisely what petitioner now argues on appeal.
 
 
 65
 Unless exceptional circumstances are present, this court will not address an issue raised for the first time on appeal. See White v. Anchor Motor Freight, 899 F.2d 555, 559 (6th Cir.1990); Pinney Dock & Transp. Co. v. Pennsylvania Cent. Corp., 838 F.2d 1445, 1461 (6th Cir.), cert. denied, 488 U.S. 880 (1988).
 
 
 66
 After asserting that this is not a novel argument because it falls within the general rubic of arguments relating to the deductibility of the charitable remainder trust, petitioner asserts that an "injustice might result to the charities affected" if the court does not consider this argument. Even if we were to consider petitioner's argument, i.e., that the trust contained only minor defects and thus was not subject to section 2055(e)(3)(C)(iii), it is without merit.
 
 
 67
 Although petitioner argues that the testator intended the bequest to be a charitable remainder unitrust, the will demonstrates no attempt to conform with the format prescribed by the Code for such a trust. That is, the son's life interest is not stated in terms of a fixed percentage of the trust's value. In its reply brief, petitioner makes a last ditch attempt to fit the bequest into the required format. Petitioner asserts that "[t]here were only minor defects in the taxpayer's will since the percentage of income going to the income beneficiary was 100%, no more, no less; hence the income beneficiary's percentage of income was fixed." We find this argument unavailing.
 
 
 68
 First, the Hall bequest typifies the kind of charitable remainder trust that Congress sought to discourage through the passage of a fixed-percentage-of-assets requirement. As the Hall trust was originally structured, "the trust corpus could be invested in high-income, high-risk assets so as to increase the value of the income interest but decrease the value of the charity's remainder interest." Oetting, 712 F.2d at 360. Thus, while the estate's charitable deduction is calculated using the present value of the remainder at the time of transfer, this remainder could be effectively eroded by the non-charitable holder of the life estate.
 
 
 69
 Second, the legislative history does not support the petitioner's interpretation. The House Report reflected concern "that governing instruments of charitable split-interest trusts which evidenced no attempt to comply with the 1969 Act rules would be reformed only when the defects [were] found upon audit by the Internal Revenue Service." H.R.Rep. No. 432 (Part II), 98th Cong., 2d Sess., reprinted in 1984 U.S.Code Cong. & Admin.News 697, 1156 [hereinafter House Report]. In the current case, only after the audit process began, did petitioner seek to reform the trust.
 
 
 70
 Furthermore, the House Report provides illustrative examples of both minor and major defects. For instance, minor defects are "defects in determining the correct payout in short taxable years" and defects "in years of additional contributions." Id. Whereas, major defects include trusts "where the 'income' interest is not expressed as an annuity interest or a unitrust interest." Id. Petitioner's trust prior to reformation clearly falls within the latter category.
 
 III.
 
 71
 Petitioner also argues that the Tax Court erred when it ruled that petitioner did not commence a timely reformation pursuant to 26 U.S.C. § 2055(e)(3)(C)(iii)(I).
 
 
 72
 Title 26 U.S.C. § 2055(e)(3)(C)(iii)(I) provides that a judicial proceeding must be commenced within 90 days of filing an estate tax return to change a reformable interest into a qualified interest. The due date of taxpayer's return was March 6, 1984, nine months after Hall's death on June 6, 1983. See 26 U.S.C. § 6075. (The return was actually filed on April 9, 1984.) Although, as written, the provision would require the judicial proceeding to have been commenced by June 4, 1984, the statute contained a phase-in provision that extended the deadline for the commencement of judicial reformation proceedings to October 16, 1984.
 
 
 73
 Petitioner asserts that it commenced a judicial proceeding when it applied to the Cuyahoga County Court for probate of the will on June 8, 1983. Petitioner contends that "[s]aid commencement was prior to any time limits imposed" by 26 U.S.C. § 2055(e)(3)(C)(iii). Because, the petitioner continues, the will was ultimately amended pursuant to Ohio Revised Code § 109.232, which does not restrict the time to amend to a specific period, and also with the approval of the Ohio attorney general's office, while initiated in a timely manner, the process "was not completed until nearly 3 years after Zella Hall's death[.]" The petitioner also points to the fact that the amendments were all retroactive to the date of Hall's death, June 6, 1983.
 
 
 74
 The Tax Court aptly characterized petitioner's argument as follows: "Petitioner's argument boils down to the anomalous contention that it commenced a judicial proceeding to reform the trust before the deadline, even though the specific actions taken to effectuate that purpose, consisting of the reformation procedure before the [Ohio] attorney general's office and the correction of Form 1.0, took place after the deadline expired." Hall, 93 T.C. at 755.
 
 
 75
 Although Congress provided the mechanism for reformation of charitable bequests to facilitate charitable gift giving, petitioner's argument has no basis in either the language of the statute or the legislative history. The statute plainly provides that judicial proceedings for reformation should be commenced within 90 days of filing a federal estate tax return or, due to the phase-in provision, before October 14, 1984. Petitioner seeks to meld the proceedings commenced shortly after Hall's death, which were probate proceedings, with the reformation proceedings, commenced in 1986. As we noted earlier, the statute provides that a "qualified reformation" is "a change of a governing instrument by reformation, amendment, construction, or otherwise which changes a reformable interest into a qualified interest...." 26 U.S.C. § 2055(e)(3)(B).
 
 
 76
 The probate proceedings initiated on June 8, 1983, were not begun with the intent to change a non-conforming trust into a code-conforming charitable remainder trust. First, the probate form, filled out by petitioner and filed with the Cuyahoga County Court, states that Hall's will is "not subject to [Ohio] Revised Code §§ 109.23 and 109.41, relating to charitable trusts." (Emphasis added.) Additionally, on December 4, 1985, beyond the deadline for reformation, the petitioner's attorney wrote to the Internal Revenue Service and stated that the estate was "considering filing a petition for reformation in order to amend the charitable trust so that it can qualify for the deduction." It is difficult to see how the petitioner could have been merely "considering" reformation in December 1985, when, on appeal, petitioner argues that the reformation proceeding had commenced as of June 1983. Finally, the most obvious indicia of petitioner's intent to reform the will, the petition for reformation, was not filed until 1986, well after the deadline for reformation had passed.
 
 
 77
 The legislative history does not support petitioner's revisionist reconstruction of events either. Specifically, the House Report provides that, "in order for the commencement [of] a judicial proceeding to be timely, the pleading must describe the nature of the defect that must be cured. The filing of a general protective pleading is not sufficient." House Report at 1158. The probate proceedings that petitioner points to as the start of the reformation proceedings list no such defect with the will. In fact, the petitioner failed to file even a general protective pleading.
 
 
 78
 Moreover, as we have noted earlier, the legislative history specifically expresses concern that reformation proceedings would begin only upon an Internal Revenue Service audit. The House Report provides that "the taxpayer must initiate reformation proceedings before the Internal Revenue Service could reasonably be expected to begin audit." House Report at 1156 (emphasis added). Thus, the petitioner's post-deadline attempt at reformation in response to an Internal Revenue Service audit was specifically rejected by Congress.
 
 
 79
 Finally, petitioner argues that the retroactivity of the Cuyohoga County Court's decision rendered on February 5, 1988, to alter the probate form to show that the will indeed provided for a charitable trust, somehow brings the reformation proceedings within the statutorily prescribed time limit. We disagree. "[T]he reformation must be retroactive to the date of death in the case of testamentary trusts ... and should provide for correction of any overpayments or underpayments prior to reformation." House Report at 1157. As reformations are necessarily retroactive, the effective date of reformation is not relevant for determining whether the proceedings for reformation were timely commenced.
 
 IV.
 
 80
 Petitioner also argues the statute providing for reformations should be liberally construed so as to effectuate Congress' intent to encourage charitable giving. Specifically, petitioner argues that, if the trustee cannot invade the corpus of the trust, then it was "the intent of Congress to allow reformation of [the] trust at almost any time...."
 
 
 81
 In effect, petitioner is asking us to make some sort of equitable exception to the application of the statute due to Congress' overriding goal to promote charitable gift giving. We find this argument without merit. The statute is unambiguous; petitioner did not timely commence reformation proceedings.
 
 
 82
 AFFIRMED.
 
 
 
 *
 The Honorable Bernard A. Friedman, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Title 26 U.S.C. § 2055(a) provides in pertinent part as follows:
 § 2055. Transfers for public, charitable, and religious uses.
 (a) In general.--For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies, devises, or transfers--
 (1) to or for the use of the United States, any State, any political subdivision thereof, or the District of Columbia, for exclusively public purposes;
 (2) to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual, which is not disqualified for tax exemption under section 501(c)(3) by reason of attempting to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office;
 (3) to a trustee or trustees, or a fraternal society, order, or association operating under the lodge system, but only if such contributions or gifts are to be used by such trustee or trustees, or by such fraternal society, order, or association, exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, such trust, fraternal society, order, or association would not be disqualified for tax exemption under section 501(c)(3) by reason of attempting to influence legislation, and such trustee or trustees, or such fraternal society, order, or association, does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office; or
 (4) to or for the use of any veterans' organization incorporated by Act of Congress, or of its departments or local chapters or posts, no part of the net earnings of which inures to the benefit of any private shareholder or individual....
 
 
 [2]
 The following excerpt from a Tax Court decision provides useful background for understanding the concerns prompting the Congressional amendments to 26 U.S.C. § 2055. It also summarizes the effects of the amendments
 Under [the pre-1969] rules, a problem arose from the manner in which trust assets could be invested. In the case of a charitable remainder, the trust corpus could be invested in a manner so as to maximize the income interest resulting in a remainder to charity that bore little relation to the present values calculated under the tables assuming a certain interest rate....
 The primary purpose of section 2055(e)(2) is to eliminate the potential for the abuse described above and to insure a greater correlation than existed under prior law between the amount of the charitable deduction and value of property eventually received by charity.... When an interest is cast in either of [the statutorily acceptable] forms, the annual payout is a fixed amount and is not a function of the income generated by the property. In effect, all income received by the trust would be combined with principal in a single fund and, for purposes of determining the payout to the income beneficiary, no distinction would be made between "income" and "principal...." Thus, when all beneficial "income" interests in a trust are cast in those prescribed forms, incentives to manipulate the income stream are removed.
 Estate of Boeshore v. Commissioner, 78 T.C. 523, 528 (1982) (footnote and citations omitted).