The Chancellor.
The bill is filed by the administrators of Afie Ackerman to recover certain property to which it is alleged that she was entitled under the will of her father, John Kip. The clauses of the will under which the controversy arises are as follow:
“ I- give and bequeath to my loving wife Gartze all my personal estate as long as she remains my widow, except those hereafter excepted; but in, case of her death or- remarriage, I will that all my moneys due on bond of note be equally divided between my three daughters, Annantye, Caty, and Afie, share and share alike, and the rest of my *25 personal estate I give and bequeath to all my children, share and share alike, as follows: one quarter part to my son John, and one quarter to Annantye, and one to Caty, and the other quarter to Afie.” And after a devise of certain real estate to the three daughters in fee, equally to be divided between them, the will directs as follows: “ My will is, that if either of my daughters die without issue, or their child or children die before they have issue, that tlieir part of my real and personal estate bequeathed to them be equally divided be-^ tween the surviving children, share and share alike.” Annantye, one of the daughters of the testator, after receiving her portion of the estate, died without issue, leaving her brother and two sisters surviving, and leaving also surviving her husband, Hermanus Vreeland, who died on the 25th of December, 1847. The complainants seek to recover the share of the personal estate and of the rents of the real estate which, upon the death of Annantye, vested by the terms of the will in her sister Afie, and for which it is claimed that the estate of her husband, Hermanus Vreeland, is liable.
In regard to the real estate, the terms of the devise leave no room for controversy. Each of the daughters took an estate subject to being divested upon her dying without issue. Upon the death of Annantye Without issue, one-third of the real estate devised to lief vested in her sister Afie, and she became entitled to the rents and profits.
As to the personal estate, the limitation over upon the death of either of the testator’s daughters is good. A limitaion over of personal property after a gift for life, or contingent on the death of the first legatee without issue, is good. Westcott v. Cady, 5 Johns. Ch. R. 334; 2 Kent’s Com. 352; 2 Roper on Leg. 1546; 1 Jarman on Wills 793.
The limitation over upon the death of the grandchildren then unborn without issue, is invalid. Any limitation of personal property, which by possibility may continue longer than for a life or lives in being, and twenty-one years after, is invalid. 2 Roper 1546-7.
*26 The first limitation over is good, though the second is invalid'; and upon the happening of the first contingency, the gift vests absolutely in the legatee. When there is a limitation over to take effect ill either of two events, one of which is too remote and the other not, if the latter happen, the limitation will take effect. Loughead v. Phelps, 2 W. Black. 704; Winter v. Wraith, 13 Simons 52.
The limitation over by the testator of the legacies to his daughters, upon their respective death, to his surviving children, was a Valid gift. Upon the death of Annantye without issue, her share Vested equally in her surviving brother and two sisters: Afie became entitled to one equal third.
By the will of the testator, his Avidow was entitled to the personal estate during her life or widowhood. On her death or marriage, the moneys due on bond or note were to be equally divided between the three daughters, and the rest of the personal estate equally between the son and three daughters. Annantye therefore, on the death of her mother, became entitled to one-third of the money due on bond, and to one-fourth of the other personal property bequeathed to the widow: The testator died in 1806. The inventory of his personal estate, made on the 19th of November, 1806, amounted to £3950 10s. lid., equal, as charged in the bill, to $9876.35. Of this sum £2248 18s; 9d., equal to $5622.34, consisted of notes and bonds due the testator; The notes and bonds, together with so much of the personal property as was bequeathed to the widow, passed into her hands, and was either lost, consumed, or retained by her until her death. She survived her husband nearly sixteen years, and died in 1822. The inventory of her estate, filed on the 22d of March, 1822, exclusive of a claim against her son, amounted to $8948.31. Of this sum $8038.36 consisted of the principal due on bonds and notes, so that the bonds and notes in the widow’s possession exceeded, by over $2000, the bonds and notes received from her husband’s estate. It is fair to assume, from this exhibit, and in the absence of all evidence *27 to tlie contrary, that no loss had. been sustained on the sum received by the widow from the estate of the testator; that the entire principal bequeathed to her remained in her hands unimpaired at her death; and that tlie sum of $5622.34, the amount of the bonds and notes belonging to the testator’s estate, was thereupon transferred to his daughters, . Of this sum Annantye was entitled to one-third, or $1874,11,
It is also claimed that the one-fourth of the balance of the personal estate of the testator, amounting to $3161.37, and to which, by the terms of the will, Annantye was entitled upon the death of the mother, must be presumed to have been received by her. The claim, to its full extent, is inadmissible, Only a part of the personal estate was bequeathed to the widow, and the limitation over applied only to the part so bequeathed to her. The legacies to the son were not included in the limitation over to the daughters.
Of the goods and chattels bequeathed to the widow, a portion consisted o.f family stores, grain, hay, and straw, and articles of' a like character, which must have been consumed by use. Another portion consisted of household furniture. The testator had given to the widow a residence for life in the homestead. Many of the articles so bequeathed were necessary for her comfortable subsistence, and would seem to have been probably intended by the testator for her use. If so, the value of the articles consumed and the diminution in value of those not consumed should (it would seem) be deducted from the value of the property bequeathed. This exception however, even as to articles which are consumed by use, obtains only where the articles are specifically bequeathed. If chattels or personal property of any description bo not given specifically, but generally as goods and chattels or as a residue of personal estate, they must be converted into money, the interest only enjoyed by the tenant for life, and the principal reserved for the remainderman. How v. Earl of Dartmouth, 7 Vesey 137; 2 Kent’s Com. 353 ; Lewis on Perpetuities 100; Benn v. Dixon, 10 Simons 636; Chambers v. Chambers, 15 Simons 183; Randall v. *28 Russell, 3 Mer. 193; Covenhoven v. Shuler, 2 Raige 122; Clark v. Clark, 8 Paige 152; Cairns v. Chaubert, 9 Paige 163.
The rule prevails, unless there be in the will an indication of a contrary intention. Collins v. Collins, 2 Mylne & Keen 703 ; Pickering v. Pickering, 2 Beavan 31; 4 Mylne Craig 289; 2 Williams on Ex’rs 1197; Randall v. Russell, 3 Mer. 194; Merrill v. Emery, 10 Pick. 512.
There ig no indication of such intention om the face of the will in question. Afie, therefore, was entitled, upon her" mother’s death, to reoeive one-fourth of the value of the personal estate bequeathed to the widow, and one-third of the amount of the principal of the bonds and mortgages.
The grounds of defence to the complainant’s claim for the rents and profits of the real estate are — 1. A release from Afie Ackerman and her husband to Hermanus Vreeland and wife of gaid lands, and all estate therein. On the 21st of February, 1818, a partition was made between the three daughters of the testator, with the assent of their husbands, of all the lands devised to them, and the partition was carried into effect by mutual releases. Vanhouten and wife and Ackerman and wife executed to Vreeland and wife a release of her share, and of all their estate, right, title, and interest therein. The answer made to this defence, viz. that the intention of the release was merely to effect a partition, and that its operation must he confined to that object alone, is by no means satisfactory. How does it appear that it was not the design of the devisees that the release should operate by way of enlarging the estate, and thus extinguishing the remainder. The mutual releases constituted a valuable consideration for such conveyance. It was a common law conveyance, and like all similar muniments of tifie, is to be construed according to its terms, and not according to the real or supposed intention of the parties. It is in terms an absolute release of all the estate, right, title, interest, property, claim, and demand whatsoever of Vanhouten and wife and Ackerman and wife of, in, and to the premises, and .every part and parcel thereof, and is utterly inconsistent *29 with the claim now set up. The authority of Dawson v. Laurence, 13 Ohio 543, does not meet the difficulty. It appeared in that case, upon the face of the deed, that partition only was intended by it — and the partition was not effectual. The release, I think, must operate according to its terms, to extinguish all the interest which the grantors then had in the land.
But there is another answer to this defence which is entitled to consideration. It is a settled maxim of the common law, that nothing passeth by a release but the interest which a man hath at the time of its execution. Sheppard’s Touch. (by Dreston) 320. “ Eb right passeth by a release but the right which the releasor hath at the time of the release made.” Littleton, § 446. A man may have a present right, though it cannot take effect in possession but infutero. Coke Litt. 265, a. Had the grantors at the date of the. release any right or estate in the remainder, as distinguished from a possibility f It was a contingent remainder. The. devise was to three daughters of the testator, and the- limitation over to Afie was contingent, not only upon the. first devisee dying without issue, but upon Afie surviving her.
A contingent remainder cannot be passed or transferred by a conveyance at law before the contingency happens, otherwise than by estoppel by deed or fine or by common recovery. Fearne on Con. Reyn., 537; 2 Cruise’s Dig. 438, tit. 16, ch. 8, § 20, 221; 5 Cruise's Dig. 252, tit. 35, eh. 12, § 3. It is said, however, that a possibility may be released where the interest is to a person who is ascertained; and that the proposition, that a remote possibility altogether uncertain cannot be released, is too general,, unless it is to be understood that no interest is created by the grant; for it may be relied on as a rule, that every interest i® lands, however remote the possibility is, may be released.. The principle is, that an interest to a person not ascertainable as to the survivor of several persons is not releasable. Touchstone 322. See Preston on Estates 76; Com. Dig., Release B. 3.
In Fortescue v. Satterthwaite, 1 Iredell 56, under a gift of *30 personal property similar in terms to those now under consideration, it was held that the contingent interest would pass by release. By the act of 1851, {Nixon's Nig. 135) all contingent or executory interests will pass by deed.
The question, as applied to the present case, is not entirely free from difficulty. It is a question of strict law, which affects not only the right to the profits but the title to the land itself, and is therefore more proper to be settled in a court of law, . It is not important that it should be settled in this cause, certainly not at this stage of it, as the evidence shows that the profits of the land received by Hermanus Vreeland were very small, and leaves it, indeed, somewhat doubtful whether he exercised any act of ownership whatever over them after his wife’s death, A reference in the case will be necessary,, and the master will be directed to ascertain and report what rents and profits were received from the land by Hermanus Vreeland after the death of his wife; or if it appears that he was in the actual possession of the land, what was the annual value thereof.
In regard to the personal estate, the defence is, that it is not shown that any part of it was received by Hermanus Vreeland, and that, therefore, his estate is not responsible for it. The sufficient answer to this defence is, that he was the executor of the estate and the husband of the legatee, and is not, therefore, in a position to deny either that the money was received by his wife, or that he is accountable for the money so received, whether he took it into his actual possession as husband or not.
It is stated, and proved as a further ground of defence, that the wife of Hermanus Vreeland invested the whole, or a large portion of the legacy, in the purchase of real estate, and in the erection of buildings and making permanent improvements thereon; that the land was afterwards conveyed, by way of gift, to a son of Afie Ackerman, who was adopted by Vreeland and wife; and that, upon the death' of the adopted son, the land was transferred to a daughter of Afie Ackerman, to whom all the other children of Afie, who alone *31 are interested in the property claimed by the complainant’s bill, have released and conveyed all their interest in the said land. It is not perceived that these facts can constitute any valid defence in equity to the complainant’s bill. The defence amounts simply to this, that Mrs. Yreeland, with the express or tacit assent of her husband, took the money, in which she had but a life estate, and to which, upon her death, her sister Afie Ackerman was entitled, invested it in real estate, and gave it to one of Afie’s children, to the exclusion of the rights of the sister. It is clearly no defence. There must be a reference to a master to take an account. This conclusion has not been adopted under the impression that there has been any intentional violation of trust or breach of good faith on the part of the widow of the testator, his daughter Annantye, or her husband, who was the executor of the estate. On the contrary, the evidence in the case is calculated to create a strong conviction that the disposition of the fund was made in good faith upon some understanding between the sisters and their husbands.