This bill, filed by the executors and trustees under the last will and testament of Irving Wayland Bonbright, who died a resident of Englewood, Bergen County, on August 1st, 1941, prays for instructions and other relief.
The estate has not yet been completely administered and the complainants seek instructions as to the disposition of dividends received by the estate on certain gold mine stocks in Compania Minas Matagalpa and Compania Minera La India, both of which are corporations of Nicaragua; the calculation of interest to be paid by the estate on certain trusts created by the will but not fully established for several years after decedent's death; the disposition of surplus income earned by the estate during its administration; and the apportionment of income taxes paid by the estate. Complainants also seek approval of the sale of the Compania Minera La India stock, which was owned by the estate, to decedent's two daughters.
The provisions of the will involved in this proceeding are contained in Articles Fourth, Fifth and Eighteenth.
By Article Fourth the decedent directed his executors to divide $1,200,000 in cash or securities into the same number of parts as he should leave children him surviving and bequeathed such parts to his trustees to be held in trust. The trustees were directed to pay the income of one part to each such child for his or her life. Upon the death of the primary life beneficiaries, the income was directed to be paid to the decedent's grandchildren, unnamed in the will and including *Page 644 
grandchildren who might be born after his death, with final remainder over to the issue of such grandchildren (or, under certain contingencies, to the grandchildren themselves).
By Article Fifth the decedent subjected the trusts under Article Fourth, collectively, to an annuity charge in favor of his widow in the amount of $30,000 annually, directing that the portion of such annuity charge against each trust should be paid from income to the extent thereof and, only in so far as such income was insufficient, from principal. The decedent directed that the first installment of such annuity should become due and payable at the date of his death.
By Article Eighteenth the decedent directed his executors to divide his residuary estate in the same manner as they were directed in Article Fourth to divide the sum of $1,200,000 and he bequeathed the parts of his residuary estate to his trustees to be held in trust for the same uses and purposes and upon the same terms as provided in Article Fourth with respect to the trusts thereby created, except that these trusts of the residuary estate were not made subject to the annuity charge in favor of his widow.
In other articles of the will the decedent made provision for other trusts and bequests none of which are involved in this proceeding.
The decedent left surviving him three children, Irving Wayland Bonbright, Jr., Eleanor Bonbright Thatcher and Elizabeth Marsden Bonbright, and five grandchildren, and in accordance with Article Fourth of the will the trust in the amount of $400,000 for each child has now been established. These trusts were established in part in 1944, added to in 1945 and completely established in 1946. The trusts in favor of the three children provided by Article Eighteenth, with respect to the residuary estate, have not yet been established.
The decedent's assets on the date of his death included, interalia, certain interests in mining enterprises; namely, stock of a corporation of Nicaragua known as Compania Minera La India having an inventory value of $193,101.92; stock of a corporation of Nicaragua known as Compania Minas Matagalpa having an inventory value of $42,550.72; a two-thirds partnership interest in a gold dredging enterprise *Page 645 
known as Boise King Placers, having an inventory value of $104,133.33; stock of a company known as Guatemala Gold Dredging Company, having an inventory value of $131,727.67; and, stock of a Canadian corporation known as East Rouyn (Quebec), Ltd., having an inventory value of $5,286.88. In addition to the foregoing interests, the decedent left interests in other mining enterprises, substantial in amount. These other mining interests have for the most part been disposed of from time to time by the executors.
The questions presented to the court by the complainants are the following:
1. Are the life beneficiaries of the trusts under Article Fourth entitled to a return (in respect of the period prior to the establishment of the trusts in full) at the rate actually earned by the estate during that period or at a specified percentage, and if at a specified percentage, what is that percentage; and from what date are they entitled to such return?
2. Does any surplus of income earned by the estate over above such income as shall be held to be properly belonging to the beneficiaries of the trusts under Article Fourth constitute income on the residuary estate or does it become part of thecorpus thereof, and if the latter, such surplus income for what period of time becomes a part of corpus?
3. Should any part of the La India and Matagalpa dividends which have been received by the executors be allocated to principal?
4. Upon what basis should the income taxes and interest thereon paid by the executors with respect to the La India and Matagalpa dividends be charged in the event that any portion of such dividends is allocated to principal?
In addition to the foregoing questions, the complainants ask for approval of the sale on March 4th, 1947, of the La India stock to the decedent's two daughters for $195 per share, or a total sum of $248,170.26.
The complainants presented additional questions with respect to the treatment of distributions on and proceeds of sale of the Boise King Placers partnership interest, the Guatemala Gold Dredging Company stock and the East Rouyn (Quebec), Ltd., stock. In their answer, the life tenants set *Page 646 
forth certain claims to such distribution and proceeds. However, since the filing of the answer, the life tenants have conceded on these questions in favor of the remaindermen and the complainants have withdrawn their request for instructions on these points.
The sale of the La India stock by the complainants to the decedent's daughters on March 4th, 1947, for $195 per share is approved. From the evidence it appears that the executors did well in disposing of the stock for the price obtained. Said price was fair and the best obtainable.
 QUESTION No. 1.
The general rule is that interest on a general legacy or general trust fund runs from one year after death. Where, however, the will indicates the testator's intention that interest is to run from some other date, effect will be given to the testator's intention. New Jersey Title Guarantee and TrustCo. v. Smith, 90 N.J. Eq. 386, 388; Gates v. Plainfield TrustCo., 121 N.J. Eq. 460, 468.
In this case it is clear that the testator intended that the income beneficiaries under Article Fourth of the will should receive income from the date of death rather than from one year after his death. By directing that the annuity be paid first from income and by further directing that the annuity be payable from death made it clear that he intended the trusts to yield income from the date of death.
In Gates v. Plainfield Trust Co., supra (at p. 470), the court said:
"The circumstances and facts here present warrant the conclusion that the complainant is entitled to income from her trust estate from the date of the death of the testator. She is therefore entitled to income from so much of her trust estate as was not set up until the same was actually set up. Howe v.Earl of Dartmouth, 7 Ves. Jr. 137; 32 Rep. 45; Ackerman v.Vreeland, 14 N.J. Eq. 23; Gaede v. Carroll, 114 N.J. Eq. 524;169 Atl. Rep. 172. Said income should be computed at the legal rate of interest from January 2d 1930. As no part of her trust estate was set up until June *Page 647 
1st, 1930, at which time $200,000 was set up, she is entitled to interest at the legal rate on her entire trust estate from January 2d 1930, to June 1st, 1930, amounting to the sum of $10,000; she is also entitled to interest on the remaining $200,000 from June 1st, 1930, to January 2d 1931 (when $100,000 more was set up in her trust estate), amounting to the sum of $7,000. On the remaining $100,000 she is entitled to interest from January 2d 1931, to May 18th, 1931 (when $25,000 was set up) and to interest on $75,000 from May 18th, 1931, to July 30th, 1932, when the remaining $75,000 was set up. * * *"
From the foregoing authorities, it seems clear that the life beneficiaries of the trusts established under Article Fourth of the will are entitled to interest from the estate at the rate of six per centum on the unpaid portion of the trust fund and that this percentage should be so paid to them from the date of the testator's death.
 QUESTION No. 2.
Where a will creates a trust of the residuary estate, the life beneficiary of the trust is entitled to the income earned by the estate from the date of decedent's death less the expenses properly chargeable to income, such as interest on debts and legacies. See Gates v. Plainfield Trust Co., supra (at pp.464, 465). No part of such surplus income is added to thecorpus of the trust fund. Berger v. Burnett, 95 N.J. Eq. 643
(at pp. 648, 649); Trust Company of New Jersey v.Glunz, 121 N.J. Eq. 593, 598.
 QUESTION No. 3.
According to the allegations of the bill, the aggregate amount of dividends received by complainants on the La India and Matagalpa gold mining stock was, up to the time of the filing of the bill, as follows:
 La India ...................... $231,625.43
 Matagalpa ..................... 41,085.36
 ___________
 Total .................... $272,710.79
 *Page 648 
The life tenants concede that all of the dividends after October 1st, 1945, on the Matagalpa stock constituted principal and stated that the portion of the Matagalpa dividends which they claimed to be income approximated $25,000. On the basis of this statement, the life tenants claim dividends as follows:
 La India ...................... $231,625.43
 Matagalpa ..................... 25,000.00
 ___________
 Total .................... $256,625.43

The portion relinquished by the life tenants and conceded by them to be corpus were dividends paid from corpus existing at the time of testator's death.
Admittedly, the dividends received by the complainants on these stocks are far greater than the normal rate of return on an average investment. The life tenants contend that all of these dividends are income whereas the remaindermen claim that the dividends should be apportioned between income and principal.
In De Brabant v. Commercial Trust Co., 113 N.J. Eq. 215, aninter vivos trust was established for the benefit of one of the daughters of the settlor. The main asset of the trust was stock in a copper mining corporation which paid large dividends. The question presented was whether these dividends were income to the life tenant or should be apportioned to corpus. The court held that the intention of the testator as to the meaning of income was the controlling factor and found that the settlor intended the revenue from these mines to be income to the life beneficiary. The court said that the legal reasoning and doctrines gleaned from the great weight of authority with respect to mining or so-called "wasting asset" corporations supports the proposition that revenue from such mining operations is income to the life beneficiary. The court (at p. 218) said:
"It is also contended by counsel for the subsequent life tenant and contingent remaindermen, as a legal proposition, that inasmuch as the entire capital assets of the copper company consisted of ore, the subsequent extraction from the *Page 649 
ground and transmutation of this ore into the form of a pure metal does not destroy its character of capital and, consequently, the distribution of the proceeds realized from the sale thereof, less only the cost of its mining, milling, marketing and incidental overhead, must, of necessity, result, at least, in a part distribution of the capital, there being no charge off for the value of the ore so removed and converted into funds.
"But, the legal reasoning and doctrines gleaned from the great weight of authority with respect to mining or so-called `wasting asset' corporations controverts, rather than supports, any such contention. That such corporations, as between their stockholders and themselves, may, in the absence of a contract to the contrary, legally pay dividends out of revenue without first creating or providing for a depletion reserve for recoupment for its wasting assets, was long ago decided in a number of cases, amongst which are Leo v. Neuchatel Asphalte Co., L.R., 41 Ch.Div. 1; 58 L.J. Ch. 408, and later by this court in Mellon v.Mississippi Wire Glass Co., 77 N.J. Eq. 498; 14 Corp. Jur. 802 §1214; People v. Roberts, 156 N.Y. 585; 51 N.E. Rep. 293.
"Both support and recognition for this rule may be found in a myriad of other reported cases holding that a life tenant, possessed of a life estate in property on which, at the inception of the life estate, there are open mines, quarries, clay pits, sand pits, oil wells or which was then impressed with the character of mining property, has the right to work said mines, quarries, clay pits or oil wells even to the point of exhaustion and, to the exclusion of the remaindermen, appropriate all of the profits realized therefrom as the income and beneficial enjoyment of his life estate."
The evidence disclosed that the reserves of the two mines in question have never been susceptible of measure. Their time of depletion could not be foretold, therefore, no depletion reserve was set up. La India and Matagalpa made substantial charges against operating expenses for "development;" that is, expenditures for the development of new reserves of ore to take the place of ore being mined. In the case of La India, a policy of "outside exploration" was employed for *Page 650 
the purpose of developing new mines. La India was never content to rest with the properties owned at the time. Its policy has been to discover additional mines to operate when present mines should cease to be profitable; that is, a new mine takes the place of a worked-out mine and the corporation continues its existence. A stockholder's interest in such corporation cannot, therefore, be measured by its mines or its reserves at a particular time. A stockholder does not own a share of the ore in the mines at the time owned by the corporation but has only the right to share in the property of the corporation as that property is dedicated and used by its directors.
With respect to the testator's intent — Bonbright was a director and vice-president of La India. He knew the policy it and Matagalpa followed of providing no depletion reserve and of treating operating profits before depletion as income available for dividends. He had other mining investments. Some, he knew, would not pay dividends. Such investments would not have returned anything for the income beneficiaries. Examples of these are Boise King Placers, Guatemala Gold Dredging and East Rouyn. From these enterprises, the corpus of the estate has received an aggregate of approximately $330,000 while income has received nothing. His will indicates that the primary objects of decedent's bounty were his wife and children. It seems reasonable to believe that he did not intend "income" to be used in a restricted sense and to be interpreted by the court in a restricted way. When consideration is given to the proportion of his estate which consisted of mining interests, such interpretation would severely reduce the income return to the primary objects of his bounty and withhold funds from them for the benefit of his grandchildren and great-grandchildren. From the foregoing, therefore, it is my opinion that these dividends should be allocated to income.
 QUESTION No. 4.
It now appears that there is no dispute between the life tenants and remaindermen on this question. The decree *Page 651 
should provide that the income tax payments made by the complainants should be charged to income and corpus in the same proportion as the benefits received. The decree should also provide that the federal estate tax and any deficiency paid by the executors thereon should be charged to corpus. Interest on the deficiency in federal estate tax should be paid from income. The life tenants and remaindermen are in accord on this point also.
The complainants pray that this court take jurisdiction over the administration of this estate and of the several trusts thereunder. In view of the circumstances, and since it appears that all parties are in accord, the decree will so provide. The parties hereto, and other parties, if any, who may be added in the future may have leave at the foot of the decree to apply for such additional, supplemental and further relief as may be necessary and to that end this court will retain jurisdiction. *Page 652