ESTATE OF Esther D. REDDERT,
Plaintiff,

v.

UNITED STATES of America, Defendant.

Civil Action No. 95–678 (AJL).

United States District Court,
D. New Jersey.

April 10, 1996.

Robert D. Borteck, Riker, Danzig, Scherer, Hyland & Perretti, Morristown, New Jersey, for Plaintiff.

Faith S. Hochberg, United States Attorney, Susan C. Cassell, Assistant United States Attorney, United States Attorney's Office, District of New Jersey, Newark, New Jersey, Gregory S. Hrebiniak, Trial Attorney, Tax Division, United States Department of Justice, Washington, D.C., for Defendant.

## OPINION

LECHNER, District Judge.

This is an action brought by the Estate of Esther D. Reddert (the "Estate") against the United States of America (the "Government") seeking recovery of Federal estate tax, interest and penalties. A complaint (the "Complaint") was filed on 14 February 1995. Jurisdiction is alleged pursuant to 28 U.S.C. § 1346(a)(1). Currently before the court is a motion for summary judgment filed by the

Estate (the "Estate Motion") and a cross-motion for summary judgment filed by the Government (the "Government Cross–Motion").[1] For the reasons set forth below, the Estate Motion is denied and the Government Cross–Motion is granted.

*Facts*

### A. *Background*

Earl J. Reddert ("Earl") executed his Last Will and Testament on 9 November 1978 ("Earl's Will").[2] Stipulation, ¶ 1; Earl's Will at 14. The parties agree Earl's Will established a trust (the "Trust") from which the remainder interest is payable outright to eleven charitable organizations recognized by the Internal Revenue Service (the "IRS") as exempt from Federal income tax under section 501(c)(3) of the Internal Revenue Code (the "Code"), 26 U.S.C. § 501(c)(3) (the "Section 501(c)(3) Charities").[3] Stipulation, ¶ 2; Earl's Will at 3–7. Earl died on 31 December 1978. Stipulation, ¶ 3. Earl's wife, Esther D. Reddert ("Testatrix") executed her Last Will and Testament on 9 July 1985 ("Testatrix's Will").[4] *Id.,* ¶ 4; Testatrix's Will at 8. Under the terms of Testatrix's Will, her residuary estate pours over into the Trust. Stipulation, ¶ 5; Testatrix's Will at 4–5.[5] Testatrix died on 4 January 1987. Stipulation, ¶ 6.

### B. *The Trust*

The Trust provides, *inter alia,* upon the death of Earl, net income of the Trust is to be used for the benefit of Testatrix. *Id.,* ¶ 8; Earl's Will at 3. After the death of Testatrix, the net income of the Trust is to be used for the benefit of Earl's daughter Audrey Oakes ("Oakes"). Stipulation, ¶ 8; Earl's Will at 3–4. Upon the death of Testatrix and Oakes, the Trust is to be divided into a number of shares equal to the number of then living children of Oakes plus one additional share for each child of Oakes who predeceases her leaving then surviving issue. Stipulation, ¶ 9; Earl's Will at 4–5. After the payment of $75,000.00 in principal toward each such share, whether paid to the child outright or from a trust established for the child's benefit (or a deceased child's issue's benefit), the remainder is to be poured into the Trust and distributed to certain enumer-

---

1. In support of the Motion and in opposition to the Cross–Motion, the Estate submitted: Memorandum of Law in Support of Plaintiff's Dispositive Motion for Summary Judgment, with exhibits (the "Estate Brief"); Memorandum of Law in Reply to Defendant's Opposition to Plaintiff's Dispositive Motion for Summary Judgment and in Opposition to Defendant's Cross–Motion for Summary Judgment, with exhibit (the "Estate Reply Brief"); Affidavit of Robert D. Borteck attaching Stipulation of Facts signed by attorneys for both parties (the "Stipulation").

 In opposition to the Motion and in support of the Cross–Motion, the Government submitted: Memorandum of the United States (the "Government Brief").

2. Earl's Will is attached as Joint Exhibit A to the Stipulation.

3. Section 501 of the Code provides, in pertinent part:

 (a) An organization described in subsection (c) ... shall be exempt from taxation.... (c)(3) [including] [c]orporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or

equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office.

 26 U.S.C. §§ 501(a) and (c)(3).

4. Testatrix's Will is attached to the Stipulation as Joint Exhibit B.

5. Testatrix's Will specifically states:

 I give, devise, bequeath and appoint all of the rest of my property, real, personal or mixed, to the Trustee of the trust created under the Will of my husband, Earl J. Reddert, who died December 31, 1978, in trust, nevertheless, to be incorporated and merged with said trust and be held as a part thereof and invested, managed, accumulated, used and distributed, both principal and income, to the persons, at the time, on the terms and conditions that govern the trust under the said Will of my said husband....

 Testatrix's Will at 4.

ated Section 501(c)(3) Charities set forth in the Trust. Stipulation, ¶ 10; Earl's Will at 5–6.

The parties agree Testatrix's Will provides a bequest of $5,000.00 to each great grandchild of Testatrix born or adopted after her death and during the continuation of the Trust. Stipulation, ¶ 11; Testatrix's Will at 4–5.[6] Testatrix's Will also directs all death taxes to be paid out of the residue of her estate. Stipulation, ¶ 14; Testatrix's Will at 8.

### C. The Estate Taxes

#### 1. Initial Payment of Taxes and IRS Audit

The parties agree the Estate declared and timely paid $155,680.00 in Federal estate taxes with the filing of its Federal estate tax return on or about 15 September 1987. Stipulation, ¶ 15. The IRS audited the Estate's tax return and presented adjustments resulting in a Federal estate tax deficiency plus statutory deficiencies (the "Alleged Deficiencies"). Id., ¶ 16. The Alleged Deficiencies resulted from three adjustments to the gross estate of Testatrix: "(a) A $22,500 increase in the value of certain real property; (b) Denial of $93,000 in funeral and administration expenses; (c) Denial of $593,964 of charitable deductions consisting of outright gifts to charity and a $539,964 gift in the form of a charitable remainder trust." Id., ¶ 17. On or about 2 March 1990, the Government assessed the Alleged Deficiencies against the Estate requiring payment of additional Federal estate tax in the amount of $240,810.00 and statutory additions of $72,275.24. Id., ¶ 18.

#### 2. The Estate's Claims for Refund

On or about 18 June 1990, the Estate filed a Claim for Refund of Federal estate tax (the "Claim for Refund I"). Id., ¶ 19; Complaint,

Exh. A. On or about 4 April 1992, the IRS permitted $68,712.00 of the Claim for Refund I (the "Permitted Claim") and disallowed $172,098.00 of the Claim for Refund I (the "Disallowed Claim"). Stipulation, ¶ 20. The Permitted Claim resulted from a $22,500.00 decrease in Testatrix's gross estate relating to valuation of real property and a $167,-642.00 increase in deductions due to the allowance of $126,642.00 for executor's commissions and attorney's fees and $41,000.00 for certain outright charitable contributions. Complaint, ¶ 6. The Disallowed Claim was attributable solely to the disallowance of a charitable deduction in the amount of $539,-964.00 for the gift of a remainder interest in the Trust to Section 501(c)(3) Charities. Stipulation, ¶ 21. The Estate appealed the Disallowed Claim on or about 22 May 1992. Id., ¶ 22.

On or about 29 July 1993, the IRS issued a Final Notice of Disallowance of the Claim for Refund I in the amount of $172,-098.00 of estate tax. Id., ¶ 23. The parties agree the Estate timely paid Federal estate taxes of $172,098.00, interest of $166,396.57 and penalties of $43,024.50 on or about 20 December 1994. Id., ¶ 24.[7] The tax, interest and penalties paid totaled $381,519.07. Id. On or about 7 April 1995, the Estate timely filed a second Claim for Refund (the "Claim for Refund II") seeking a refund of the payment of Federal estate taxes, interest and penalties in the amount of $381,519.07.[8] Id., ¶ 25. The Estate requested the IRS immediately deny the Claim for Refund II.[9] Id.

### D. Procedural History

On 14 February 1995, the Estate filed the Complaint initiating this action. The Government filed an answer and issue was joined on 23 May 1995. The parties completed discovery and thereafter agreed upon the

---

6. Earl's Will, however, did not give Testatrix any power to amend the Trust. Stipulation, ¶ 7.

7. When amounts paid or owed alleged in the Complaint differ from amounts stated in the Stipulation, the stipulated amount is used. Because the Government Cross–Motion is granted as a matter law, the precise amounts are immaterial to resolution of this action.

8. The Claim for Refund II is attached to the Stipulation as Joint Exhibit C.

9. As a procedural matter, the Estate filed the Claim for Refund II. The Government does not assert a failure to exhaust administrative remedies defense.

Stipulation. Both parties seek resolution of this matter pursuant to Rule 56 of the Federal Rules of Civil Procedure.

The Estate alleges entitlement to a refund of taxes, interest and penalties arguing the remainder interest of the Trust qualifies for a charitable estate tax deduction pursuant to section 2055(a) of the Code, 26 U.S.C. § 2055(a). Complaint, ¶ 14; Estate Brief at 6. The Estate acknowledges the Trust does not comply with certain requirements of the Code relating to charitable deduction but asserts the Trust should be afforded reformation relief under current section 2055(e)(3)(C) of the Code. Estate Brief at 7–8. The Estate claims the Trust is not subject to the requirement that reformation be sought by 31 December 1981. *Id.* at 8–10 (arguing against application of 26 U.S.C. § 2055(e)(3)(C) (1984) as in effect through 17 July 1984). The Estate further asserts the Trust contains an ascertainable reformable interest.[10] *Id.* at 11–13.

The Government argues the Trust is ineligible for charitable deduction and Testatrix's pour over into the Trust was therefore not eligible for the claimed charitable contribution deduction either. Government Brief at 9–14. The Government also contends the remainder interest is not entitled to a charitable contribution deduction because the amount of the charitable bequest cannot be ascertained. *Id.* at 15.

*Discussion*

A. *Summary Judgment Standard of Review*

To prevail on a motion for summary judgment, the moving party must establish "there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The present task is to determine whether disputed issues of fact exist and whether one party is entitled to judgment. A district court, however, may not resolve factual disputes on a motion for summary

judgment. *Linan–Faye Constr. Co. v. Housing Auth.,* 49 F.3d 915, 926–27 (3d Cir.1995) ("at the summary judgment stage, 'the judge's function is not himself [or herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial'") (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986)); *Desvi, Inc. v. Continental Ins. Co.,* 968 F.2d 307, 308 (3d Cir.1992). In considering a motion for summary judgment, all evidence submitted must be viewed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Healey v. Southwood Psychiatric Hosp.,* 78 F.3d 128, 128–31 (3d Cir.1996); *General Ceramics Inc. v. Firemen's Fund Ins. Co.,* 66 F.3d 647, 651 (3d Cir.1995).

The dispute between the parties in this case rests on conflicting interpretations of current and former versions of section 2055 of the Code. As discussed, the parties have stipulated to the facts relevant to this dispute. The resolution of issues depends wholly upon the interpretation of specific statutory language and the applicable law. Summary judgment is therefore appropriate. *See DiBiase v. SmithKline Beecham Corp.,* 48 F.3d 719, 724 (3d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 306, 133 L.Ed.2d 210 (1995); *see also Gans v. Mundy,* 762 F.2d 338, 341 (3d Cir.) ("summary judgment is proper where the facts are undisputed"), *cert. denied,* 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985).

B. *Burden of Proof*

A taxpayer in a refund action has the burden of proving the propriety of a deduction. *INDOPCO, Inc. v. Commissioner,* 503 U.S. 79, 84, 112 S.Ct. 1039, 1042–43, 117 L.Ed.2d 226 (1992) ("[the] Court has noted the 'familiar rule' that [a] . . . 'tax deduction

---

10. The Estate asserts Testatrix's bequest to afterborn and afteradopted great grandchildren is a *de facto* amendment to the Trust, an amendment Testatrix did not have the power to make. Estate Brief at 12. The Estate further asserts the bequest is void, and if necessary, it would seek to

reform Testatrix's Will to eliminate the bequest by having a guardian *ad litem* appointed to renounce the interests of any afterborn or afteradopted great grandchildren. *Id.* Because the Government Cross-Motion is granted on other grounds, this issue is moot.

is a matter of legislative grace and that the burden of clearly showing the right to the claimed deduction is on the taxpayer'") (quoting *Interstate Transit Lines v. Commissioner,* 319 U.S. 590, 593, 63 S.Ct. 1279, 1281–82, 87 L.Ed. 1607 (1943)); *United States v. General Dynamics Corp.,* 481 U.S. 239, 245, 107 S.Ct. 1732, 1737, 95 L.Ed.2d 226 (1987) (citing *Helvering v. Taylor,* 293 U.S. 507, 514, 55 S.Ct. 287, 290, 79 L.Ed. 623 (1935)); *United States v. Anderson,* 269 U.S. 422, 443, 46 S.Ct. 131, 135, 70 L.Ed. 347 (1926); *Freck v. IRS,* 37 F.3d 986, 992 n. 8 (3d Cir.1994); *Naporano v. United States,* 834 F.Supp. 694, 704 (D.N.J.1993) ("the Taxpayers [must].... come forward with a clearly applicable Code provision allowing their deduction").

■ The Estate must demonstrate the invalidity of the tax assessment on the facts presented. *Anderson,* 269 U.S. at 443, 46 S.Ct. at 135; *Freck,* 37 F.3d at 992 n. 8; *see also Reinecke v. Spalding,* 280 U.S. 227, 232–33, 50 S.Ct. 96, 97–98, 74 L.Ed. 385 (1930); *South Jersey Sand Co. v. Commissioner,* 267 F.2d 591, 593 (3d Cir.1959); *Smelley v. United States,* 806 F.Supp. 932, 934 (N.D.Ala. 1992) ("[i]t has long been settled that the burden of proof in litigation of tax matters generally rests with the taxpayer, and it places on the taxpayer the burden of going forward with the evidence as well as the burden of persuasion") (citing *Helvering v. Taylor,* 293 U.S. at 515, 55 S.Ct. at 290–91), *aff'd,* 3 F.3d 389 (11th Cir.1993). The parties rely on the facts included in the Stipulation and have not offered additional data.

### C. *Reformation Under 26 U.S.C. § 2055*

### 1. *General Overview of Statutory Mechanics*

■ Section 2055(a) of the Code provides as a deduction from the value of a gross estate bequests to charities. 26 U.S.C. § 2055(a)(2). The statute, however, disallows a charitable deduction "[w]here an interest in property ... passes ... from the decedent to a person, or for a use, described in subsection (a) [i.e., a charity], and an interest ... in the same property passes ... from the decedent to a person, or for a use, not described in subsection (a) ..." (a "Split–Interest Trust") unless the remainder interest to the charity is in the form of a charitable remainder annuity trust, a charitable remainder unitrust or a pooled income fund.[11] 26 U.S.C. § 2055(e)(2)(A). Section 2055(e)(3) grants an estate the opportunity to bring a bequest's provisions into compliance with 2055(e)(2) through reformation and thereby gain the tax benefit of a charitable deduction. 26 U.S.C. § 2055(e)(3).

### 2. *History of Split–Interest Trust Reformation*

In 1969, Congress passed the Tax Reform Act to curb abusive use of Split–Interest Trusts with charitable remainders. H.R.Rep. No. 91–413, 91st Cong., 1st Sess., pt. 1, at 58 (1969), *reprinted in* 1969 U.S.C.C.A.N. 1645, 1704; *see also Estate of Johnson v. United States,* 941 F.2d 1318, 1321 (5th Cir.1991); *Estate of Strock v. United States,* 655 F.Supp. 1334, 1336 (W.D.Pa. 1987). Under the Tax Reform Act of 1969, a remainder interest in trust qualifies for an estate tax charitable deduction only if the trust is in the form of a charitable remainder annuity trust, a charitable remainder unitrust or is a remainder interest in a pooled income fund. Tax Reform Act of 1969, Pub.L. No. 91–172, § 201(d)(1), 83 Stat. 487, 549–54 (1969) (codified at 26 U.S.C. § 2055(e)(2)(A)). To protect testators who

11. In general, a charitable remainder annuity trust is a trust from which a sum certain, which is at least five percent of the initial net fair market value· of all the property placed in the trust, is to be distributed at least annually to a noncharitable beneficiary for a certain term, and the remainder is to pass to or for the use of a qualified charity. 26 U.S.C. §§ 664(d)(1)(A) and 2055(e)(2)(A). A charitable remainder unitrust is a trust from which a fixed percentage, at least five percent, of the net fair market value of the assets of the trust valued each year, is to be distributed at least annually to a noncharitable beneficiary for a certain term, and the remainder is to pass to or for the use of a qualified charity. 26 U.S.C. §§ 664(d)(2)(A) and 2055(e)(2)(A). A pooled income fund is generally a trust to which each donor transfers property, contributing an irrevocable remainder interest in such property to or for the use of a qualified charity while retaining an income interest for the life of the beneficiaries. 26 U.S.C. §§ 642(c)(5) (outlining specific requirements for qualification as a pooled income fund) and 2055(e)(2)(A).

executed their wills before the 1969 enactment, Congress added a "savings" clause in 1974 permitting reformation of trusts that failed to comply with the new provisions. *See* Pub.L. No. 93–483, § 3, 88 Stat. 1457, 1457–58 (1974) (codified at 26 U.S.C. § 2055(e)(3)).

The current savings provision permits an estate tax charitable deduction if the governing instrument (i.e., a will or trust document) contains a reformable interest prior to reformation and reformation of the governing instrument occurs. 26 U.S.C. § 2055(e)(3)(C). A reformable interest is an interest for which an estate tax charitable deduction would be allowable but for the specifications requiring (1) the charitable remainder be in one of the three acceptable trust forms and (2) all payments to noncharitable beneficiaries be expressed in stated dollar amounts or fixed percentages of the fair market value of the trust property. 26 U.S.C. §§ 2055(e)(2) and (3)(C)(i) and (ii). The current statute, however, exempts any interest passing under a will executed before 1 January 1979 or a trust created before 1 January 1979 from the stated dollar amount or fixed percentage requirements of section 2055(e)(3)(C)(ii). 26 U.S.C. § 2055(e)(3)(C)(iv).

Since its initial passage, Congress has enacted, reenacted and amended the savings provision set forth in section 2055(e)(3). As originally enacted in 1974, the provision applied to estates of decedents dying after 31 December 1969, whose wills and trusts were executed before 21 September 1974 and were amended or conformed by 31 December 1975 or by the 30th day after judicial reformation proceedings were commenced, if commenced on or before 31 December 1975. Pub.L. No. 93–483, § 3, 88 Stat. at 1457–58. Subsequent amendments in 1976, 1978 and 1980 successively extended the section's effective date to include wills and trust executed or created before 31 December 1978 by decedents dying after 31 December 1969 and amended or conformed before 31 December 1981 (the "Pre–1984 Amendment Rule"). Tax Reform Act of 1976, Pub.L. No. 94–455, § 1304, 90 Stat. 1520, 1715 (1976); Revenue Act of 1978, Pub.L. No. 95–600, § 514, 92 Stat. 2763, 2883 (1978); Miscellaneous Revenue Act of 1980, Pub.L. No. 96–605, § 301, 94 Stat. 3521, 3530–31 (1980).

A 1984 amendment replaced section 2055(e)(3) with a revised and "permanent" rule for the reformation of charitable trusts (the "1984 Rule"). Deficit Reduction Act of 1984, Pub.L. No. 98–369, § 1022(a), 98 Stat. 494, 1026 (1984); *see Estate of Hall v. Commissioner,* 93 T.C. 745, 753 n. 2, 1989 WL 154261 (1989), *aff'd,* 941 F.2d 1209 (6th Cir. 1991). The 1984 Rule exempted "any interest passing under a will executed before January 1, 1979, or under a trust created before such date" from the requirement the beneficiary's interest be specified in a dollar amount or a fixed percentage. Pub.L. No. 98–369, § 1022(a)(3)(C)(iv), 98 Stat. at 1027. This amendment applies retroactively to reformations made after 31 December 1978, *excluding* reformations to which section 2055(e)(3) as in effect on 17 July 1984 applies. *Id.,* 98 Stat. at 1029 (emphasis added).

D. *Estates To Which Section 2055(e)(3) As In Effect On 17 July 1984 Applies*

■ In an attempt to establish its argument, the Estate cites to two IRS Technical Advice Memoranda (the "TAMs") involving situations in which the IRS applied the 1984 Rules to estates with decedents who executed their wills before 1 January 1979. Tech. Adv.Mem. 88–44–033 (4 Nov. 1988); Tech. Adv.Mem. 88–17–004 (11 Jan. 1988). First, as the Government indicates, the Code specifically provides that TAMs "may not be used or cited as precedent." [12] 26 U.S.C. § 6110(j)(3); *see also United States v. Hill,* 506 U.S. 546, 564 n. 12, 113 S.Ct. 941, 953 n. 12, 122 L.Ed.2d 330 (1993) (quoting 26 U.S.C. § 6110(j)(3)); *Estate of D'Ambrosio v. Commissioner,* Tax Ct.Rep. (CCH) 50,902, at 4409 (1995). Private letter rulings and TAMs, however, "do reveal the interpretation put upon the statute by the agency charged with the responsibility of administering the revenue laws" and may provide "evidence"

---

**12.** Section 6110(j)(3) provides, in pertinent part: "Unless the Secretary otherwise establishes by regulations, a written determination may not be used or cited as precedent." 26 U.S.C. § 6110(j)(3).

that such construction "is compelled by the language of the statute." *Hanover Bank v. Commissioner*, 369 U.S. 672, 686–87, 82 S.Ct. 1080, 1088–89, 8 L.Ed.2d 187 (1962); *see also Woods Investment Co. v. Commissioner*, Tax.Ct.Rep. (CCH) 42,315 at 3403 n. 15, 1985 WL 15380 (1985) (citing *Hanover Bank*, 369 U.S. at 686–87, 82 S.Ct. at 1088–89). The TAMs are addressed for purposes of explaining the defects in the Estate's argument.

In both TAMs, the decedents (the "TAM Decedents") died after enactment of the 1984 Rules. *See* Tech.Adv.Mem. 88–44–033; Tech.Adv.Mem. 88–17–004. When the TAM Decedents died, one in November 1984 and the other in June 1987, each of their estates were governed by the estate tax law then in effect—the 1984 Rules. *Id.* Until the TAM Decedents died, neither were decedents and therefore neither had an estate subject to estate taxes under 26 U.S.C. §§ 2001 *et seq.* 26 U.S.C. § 2001(a) ("[a] tax is hereby imposed on … the taxable estate of every ·*decedent* who is a citizen of the United States") (emphasis added). This is such a basic concept it is not directly addressed in precedent and must be gleaned from cases examining other estate tax issues. *See, e.g., City Bank Farmers Trust Co. v. Bruguiere*, 130 N.J.Eq. 213, 214, 21 A.2d 735 (N.J.1941) (*per curiam*) (affirming determination that the date of death of decedent is the date from which the net value of the estate is to be ascertained); *Bonbright v. Bonbright*, 142 N.J.Eq. 642, 647, 61 A.2d 201 (N.J.Ch.1948) ("[w]here a will creates a trust of the residuary estate, the life beneficiary of the trust is entitled to the income earned by the estate from the date of decedent's death"); *see also Dommerich v. Kelly*, 132 N.J.Eq. 220, 227, 27 A.2d 871 (N.J.Prerog.Ct.1942), *aff'd*, 130 N.J.L. 542, 33 A.2d 893 (N.J.Super.1943), *aff'd*, 132 N.J.L. 141, 39 A.2d 30 (N.J.1944); *compare* 26 U.S.C. § 2001 to N.J.S.A. § 54:34–1 (transfer occurs on the date of death and the value of the transferred property is determined on that date; tax vests in the State immediately upon death); *Kollinger Estate v. Director*, 4 N.J.Tax 652, 655 (1982) (analyzing N.J.S.A. § 54:34–1).

■ As previously stated, the 1984 Rules are not applicable to any reformation that should have occurred under section 2055(e)(3) of the Code, as in effect on 17 July 1984. Pub.L. No. 98–369, § 1022(a)(3)(C)(iv), 98 Stat. at 1029. Earl executed his will on 9 November 1978 and died on 31 December 1978. Stipulation, ¶¶ 1, 3. His estate and the Trust are governed by the law as in effect on 17 July 1984. 26 U.S.C. § 2001(a); *see also City Bank Farmers Trust*, 130 N.J.Eq. at 214, 21 A.2d 735; *Bonbright*, 142 N.J.Eq. at 647, 61 A.2d 201. While both TAM decedents executed their wills before 1 January 1979, neither died until after 18 July 1984 and their estates were thus governed by the 1984 Rules.

The Estate further argues that if the Government's position is to prevail, any individual who dies today and who executed a will before 1 January 1979 could not seek reformation under the 1984 Rules. Estate Reply Brief at 5. The plain language of the Code itself discloses the fundamental flaws in the reasoning of the Estate. An individual who dies today has an estate established after 18 July 1984 and such estate is subject to the 1984 Rules. 26 U.S.C. § 2001(a); *see City Bank Farmers Trust*, 130 N.J.Eq. at 214, 21 A.2d 735; *Bonbright*, 142 N.J.Eq. at 647, 61 A.2d 201.

### E. *Statutory Interpretation*

The Pre–1984 Amendment Rule provides, in part:

> In the case of a will executed before December 31, 1978, *or* a trust created *before* such date, if a deduction is not allowable at the time of the decedent's death … and if the governing instrument is amended or conformed on or before December 31, 1981 … a deduction shall nevertheless be allowed.

26 U.S.C. § 2055(e)(3) (1984) (emphases added). The Trust created by Earl's Will is a Split–Interest Trust providing for the payment of income to private individuals (Testatrix and Oakes) for their lifetimes and thereafter, for the distribution of the remainder to charity. Estate Brief at 7–8; Government Brief at 6. For a Split–Interest Trust to have a deductible charitable bequest, the trust must comply with the requirements of section 2055 of the Code. *See* Pub.L. No.

91–172, § 201(d)(1), 83 Stat. at 549–54 (codified at 26 U.S.C. § 2055(e)). The Estate argues the 1984 Rule applies to the Trust and to Testatrix's pour over into the Trust irrespective of the fact Earl's Will was executed *before* 31 December 1978. Estate Brief at 9–10. The thrust of the argument is that the Pre–1984 Amendment Rule Trust was created *on* 31 December 1978, Earl's date of death, and *not before* 31 December 1978. *Id.; see* 26 U.S.C. § 2055(e)(3) (1984). The Government opposes this reading of the Pre–1984 Amendment Rule arguing the Pre–1984 Amendment Rule is clear; section 2055(e)(3), as in effect on 17 July 1984, applies not only to trusts created before 31 December 1978 but also to *wills executed before 31 December 1978.* Government Brief at 9–14; *see Estate of Hall,* 93 T.C. at 753 n. 2.

While not directly asserted by the Estate, the Estate's reading of the Pre–1984 Amendment Rule centers on an issue of statutory construction whether the word "or" in the Pre–1984 Amendment Rule is used to connect phrases or clauses representing alternatives. The Estate's interpretation of the Pre–1984 Amendment Rule leaves the clause "[i]n the case of a will executed before December 31, 1978" without effect. *See* 26 U.S.C. § 2055(e)(3) (1984). The Government, on the other hand, argues a more literal interpretation of the statute. *See* Government Brief at 9–14. The Government contends the 31 December 1981 date capping reformation is applicable when either a will was executed before or a trust was created before 31 December 1978.[13] *Id.* at 10–12.

 It is a cardinal rule of statutory construction that when "the terms of a statute are unambiguous, judicial inquiry is complete." *Adams Fruit Co. v. Ramsford Barrett,* 494 U.S. 638, 642, 110 S.Ct. 1384, 1386–87, 108 L.Ed.2d 585 (1990) (citing *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701–02, 66 L.Ed.2d 633 (1981)). In such a case, where the plain meaning of a statute is evident from the face of the statute, " 'the sole function of the courts is to enforce it

according to its terms.' " *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)); *see also In re Unisys Sav. Plan Litig.,* 74 F.3d 420, 444 (3d Cir.1996) (" 'where [Congress'] will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive' ") (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 570, 102 S.Ct. 3245, 3249–50, 73 L.Ed.2d 973 (1982)); *Resolution Trust Corp. v. W.W. Dev. & Management, Inc.,* 73 F.3d 1298, 1306 (3d Cir.1996); *In re TMI,* 67 F.3d 1119, 1123 (3d Cir.1995); *United States v. Kramer,* 913 F.Supp. 848, 862 (D.N.J.1995). Only when the language is ambiguous or there is an explicit legislative intention that contradicts the plain language of the statute should a court consider the legislative history of the statute. *See Escondido Mut. Water Co. v. LaJolla Band of Mission Indians,* 466 U.S. 765, 772, 104 S.Ct. 2105, 2110, 80 L.Ed.2d 753 (when "Congress expresses its purposes through the ordinary meaning of the words it uses ... '[a]bsent a clearly expressed legislative intention to the contrary, [statutory] language must ordinarily be regarded as conclusive' ") (quoting *North Dakota v. United States,* 460 U.S. 300, 312, 103 S.Ct. 1095, 1102, 75 L.Ed.2d 77 (1983)), *rehearing denied,* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984); *In re Continental Airlines, Inc.,* 932 F.2d 282, 287 (3d Cir. 1991).

 This rule has long been applied with equal force to matters involving the Code. *See Gould v. Gould,* 245 U.S. 151, 153, 38 S.Ct. 53, 53, 62 L.Ed. 211 (1917) ("[i]n the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out"). Each word of the Code is given its "ordinary, everyday" meaning and every word is given full effect. *Commissioner v. Soliman,* 506 U.S. 168, 174, 113

---

**13.** Section 2055(e)(3), as in effect on 17 July 1984, applies to any decedent who died on or before 17 July 1984. *See supra* Part D.

S.Ct. 701, 705–06, 121 L.Ed.2d 634 (1993); *Crane v. Commissioner*, 331 U.S. 1, 6, 67 S.Ct. 1047, 1050–51, 91 L.Ed. 1301 (1947); *Naporano*, 834 F.Supp. at 700; *see also Xerox Corp. v. United States*, 41 F.3d 647, 658 (C.A.Fed.1994), *cert. denied*, —— U.S. ——, 116 S.Ct. 72, 133 L.Ed.2d 32 (1995); ·*Heublein, Inc. v. United States*, 996 F.2d 1455, 1465 (2d Cir.1993); *Ewing v. United States*, 914 F.2d 499, 504 n. 11 (4th Cir.1990), *cert. denied*, 500 U.S. 905, 111 S.Ct. 1683, 114 L.Ed.2d 78 (1991).

■ There exists a long-standing rule that the terms of any provision allowing a deduction are to be strictly construed. Under the Federal taxation system, every element of gross revenue of a person, corporate or individual, "is subject to tax unless there is a statute or some rule of law that exempts that person or element." *HCSC–Laundry v. United States*, 450 U.S. 1, 5, 101 S.Ct. 836, 838, 67 L.Ed.2d 1 (1981); *Naporano*, 834 F.Supp. at 700; *see Deputy v. du Pont*, 308 U.S. 488, 493, 60 S.Ct. 363, 366, 84 L.Ed. 416 (1940) (deductions only allowed where there is a "clear provision"); *White v. United States*, 305 U.S. 281, 292, 59 S.Ct. 179, 184, 83 L.Ed. 172 (1938) ("every deduction ... is allowed as a matter of grace") (citing *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440, 54 S.Ct. 788, 790–91, 78 L.Ed. 1348 (1934)); *Helvering v. Inter–Mountain Life Ins. Co.*, 294 U.S. 686, 689–90, 55 S.Ct. 572, 574–75, 79 L.Ed. 1227 (1935) ("[d]eductions are allowed only when plainly authorized"); *Miller v. Quinn*, 792 F.2d 392, 394–95 (3d Cir.1986) ("only as there is a clear provision ... can a particular deduction be allowed"); *see also Foutz v. United States*, 860 F.Supp. 788, 792 (D.Utah 1994), *aff'd*, 72 F.3d 802 (10th Cir.1995); *Blatt v. United States*, 830 F.Supp. 882, 888 (D.S.C.1993), *aff'd*, 34 F.3d 252 (4th Cir.1994); *In re Dakota Industries, Inc.*, 131 B.R. 437, 440–41 (D.S.D.1991). Any ambiguities in the Code provisions allowing deductions are to be resolved in favor of the Government. *See White*, 305 U.S. at 292, 59 S.Ct. at 184. Courts are constrained to interpret and enforce the Code as Congress enacted it.

Because each word of the Code is to be defined with its ordinary, everyday meaning, the Supreme Court has defined terms in the Code by using the basic dictionary definitions. *See, e.g., Soliman*, 506 U.S. at 174, 113 S.Ct. at 705–06 (quoting the definition of "principal" from *Webster's Third New International Dictionary* 1802 (1971)); *Begier v. IRS*, 496 U.S. 53, 61, 110 S.Ct. 2258, 2264, 110 L.Ed.2d 46 (1990) (quoting the definition of "withholding" from *Webster's Third New International Dictionary* 2627 (1981)). The Supreme Court's practice of using basic dictionary definitions to define terms in the Code pre-dates the Tax Reform Act of 1969. *See, e.g., Massey Motors, Inc. v. United States*, 364 U.S. 92, 106 n. 7, 80 S.Ct. 1411, 1419 n. 7, 4 L.Ed.2d 1592 (1960) (quoting the definitions of "salvage" and "useful life" from *A Dictionary for Accountants* 371 (1952)); *Crane*, 331 U.S. at 6 n. 14, 67 S.Ct. at 1051 n. 14 (defining "property" from *Webster's New International Dictionary* (2d ed.), *Funk and Wagnalls' New Standard Dictionary* and the *Oxford English Dictionary* ).

■ The term "or" has a clear, universally accepted meaning. *See, e.g., Black's Law Dictionary* 1095 (6th ed. 1990) ("[a] disjunctive particle used to express an alternative or to give a choice to one among two or more things...."); *Webster's Third New International Dictionary* 1585 (1966) ("used as a function word to indicate ... an alternative between different or unlike things...."); *Random House Dictionary* 1360 (2d ed. 1987) ("used to connect words, phrases, or clauses representing alternatives...."). The Estate's argument does not comport with basic statutory interpretation principles; the Estate's reading of the Code leaves an entire clause without effect and ignores the basic meaning and function of the conjunctive word "or." The only logical reading of the Pre–1984 Amendment Rule requires application of the Pre–1984 Amendment Rule to the Trust and Testatrix's pour over.

### F. *Other Grounds Asserted Are Moot*

The other grounds upon which the Government argues the Trust does not qualify for a charitable estate tax deduction, including the lack of ascertainable value and failure to qualify under sections 2055(e)(3)(C)(ii) and (e)(3)(B)(iii) of the Code, are moot.

*Conclusion*

For the reasons stated above, the Estate Motion is denied and the Government Cross–Motion is granted.